UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL A. GARGANO,<br><br>          Plaintiff,<br><br>v.<br><br>RONALD ZIMMER, ZELITA ZIMMER,<br>and ZIMMER & ASSOCIATES,<br><br>          Defendants. | Civil Action No. 03-12605-NG |

## AFFIDAVIT OF CELITA ZIMMER[1]

Celita Zimmer, on oath, deposes and says as follows:

1.    I am one of the purported defendants in the above-captioned action. The other purported defendants in this action are my husband (Ron Zimmer) and Zimmer & Associates. I submit this affidavit in connection with the Defendants' Opposition to Plaintiff's Requests for Default Pursuant to Rule 55(a).

2.    I am the principal of Zimmer & Associates, a construction company that builds high end homes in the Cayman Islands. The company is a Caymanian registered Ordinary Resident Company, with a principal place of business in Georgetown, Grand Cayman. This is the company's only office (other than a home office I sometimes use). All of Zimmer & Associates' work is done in the Cayman Islands. My husband is an employee of Zimmer & Associates.

3.    Mr. Gargano has visited Zimmer & Associates' office in Georgetown, Grand Cayman. I am certain that Mr. Gargano is aware that Zimmer & Associates does not have any

---

[1] The plaintiffs incorrectly refer to me as Zelita Zimmer.

offices in the United States. He also knows that Zimmer & Associates does not do any work in the United States.

4. My husband and I, and our four children, live in Grand Cayman year round. We have lived full-time in the Cayman Islands for nearly the past twenty years (save approximately fourteen months in Florida in the late 1990s while my husband was in graduate school). I am a Caymanian citizen. My husband was not born in the Cayman Islands, but is a Caymanian by grant of status. Neither of us has been to Massachusetts in over twenty years.

5. My husband and I have known Mr. Gargano personally since the early 1990s, as Mr. Gargano owns property close to our home. We considered Mr. Gargano to be a friend. He has visited us at our home on more than one occasion, and I am certain that Mr. Gargano knows that we are full-time residents of the Cayman Islands.

6. I am also certain that Mr. Gargano knows that my husband and I own a vacation home in southwestern Pennsylvania, near West Virginia. As Mr. Gargano is fully aware, we visit our vacation home only several weeks per year.

7. Several years ago, Mr. Gargano approached us to build a house for him. In April 2002, Zimmer & Associates contracted to build a house for Mr. Gargano at Cayman Kai, Grand Cayman. The signatories to the contract were Mr. Gargano and myself, on behalf of Zimmer & Associates. The contract was drafted, agreed-to, and executed in Grand Cayman.

8. Work on the house began in November 2002. Mr. Gargano made payments under the contract by wiring money to Zimmer & Associates' bank in the Cayman Islands. Mr. Gargano wired money to Zimmer & Associates from banks located in the United States and the Cayman Islands.

9. Consistent with an agreed-upon time frame for completing the house (i.e., 12 to 14 months), the house was completed in December 2003. Around this time, I became concerned that Mr. Gargano was going to default on his payment obligations. On December 12, 2003, I faxed him a memorandum addressing my concerns.

10. Thereafter, on December 22, 2003, Mr. Gargano sent, by Federal Express, a harassing letter addressed to my husband and me while we were on vacation in Pennsylvania. Mr. Gargano blamed us for delaying the work and abandoning the job, even though the job had already been completed.

11. My husband and I subsequently learned that Mr. Gargano had filed litigation against us in Massachusetts. We learned this because Mr. Gargano (or someone on his behalf) had my father-in-law served with the complaint at his home in Florida. I understand that my father-in-law told the process server that he was not the same person in the Complaint, yet Mr. Gargano (or someone on his behalf) instructed that my father-in-law be served anyway, to the distress of my father-in-law. I understand that my father-in-law wrote a letter to the Court about this "service" on him. In addition, I understand that another family member was similarly "served" at the direction of Mr. Gargano or his attorneys.

12. On January 22, 2004, Timothy Scannell, apparently a lawyer from Mr. Gargano's law firm, sent to my husband's Caymanian email account a letter which "enclosed ... an Amended Complaint filed in the United States District Court for the District of Massachusetts, which was processed on the within date. Service of process has been perfected on all of the Defendants, despite your attempts to avoid the same." A copy of Mr. Scannell's email (with the electronically transmitted draft Amended Complaint) is attached hereto as Exhibit A.

3

13. The Amended Complaint sent by Mr. Scannell was unsigned. There were no other papers accompanying the email cover letter.

14. Other than this email from Mr. Scannell, my husband and I have not been sent anything regarding this action by Mr. Gargano or anyone on his behalf. We have not been served with a summons.

15. My husband and I have been in the Cayman Islands continuously since early January, when we returned from our vacation in Pennsylvania. I understand that Mr. Gargano knows we have been here since that time, as his secretary called Mr. Gargano's interior decorator in early January inquiring about our whereabouts. We have not seen the materials allegedly left in Pennsylvania.

Signed under the pains and penalties of perjury this 23rd day of March, 2004.

_____
Celita Zimmer

13. The Amended Complaint sent by Mr. Scannell was unsigned. There were no other papers accompanying the email cover letter.

14. Other than this email from Mr. Scannell, my husband and I have not been sent anything regarding this action by Mr. Gargano or anyone on his behalf. We have not been served with a summons.

15. My husband and I have been in the Cayman Islands continuously since early January, when we returned from our vacation in Pennsylvania. I understand that Mr. Gargano knows we have been here since that time, as his secretary called Mr. Gargano's interior decorator in early January inquiring about our whereabouts. We have not seen the materials allegedly left in Pennsylvania.

Signed under the pains and penalties of perjury this 23rd day of March, 2004.

Celita Zimmer

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON:

3/23/04 SMcQ

4