UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS, ss.                    C.A. No. 03-cv-12605

PAUL A. GARGANO )
      Plaintiff, )
)
v. )
)
)
RONALD ZIMMER, CELITA ZIMMER )
and ZIMMER & ASSOCIATES )
      Defendants )
)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF JURISDICTION OVER THE DEFENDANTS**

**Factual Background:**

**I. Creation of the Contract**

a.    **The Parties:**

This case arises out of dealings between Paul A. and Sheila K. Gargano (hereinafter, the Gargano's) and Ronald and Celita Zimmer, (hereinafter, the Zimmer's) both individually and in their capacity as agents of Zimmer & Associates, Ltd. Paul and Sheila Gargano are residents of Massachusetts with primary residences in Cambridge and Hyannis. Ron Zimmer is a U.S. citizen by birth and travels with a U.S passport. Celita Zimmer is a naturalized citizen of the U.S. and has both a U.S. passport and Caymanian passport. Their 4 minor children were all born in the US. and attend school in the United States.

In 2002, Paul A. Gargano initiated conversations with Ronald Zimmer, who was known to the Gargano's to be an American citizen and contractor who also built homes in the Cayman Islands. (See, Tab 1, Affidavit of Paul A. Gargano) The Gargano's expressed a desire to tear down an existing home they owned on Cayman Kai and build a new home on the same location. The Gargano's desired to contract with an American contractor specifically and they knew that Ronald Zimmer was an American citizen with a United States residence and visible in the home construction field in Florida and Pennsylvania. (Tab 1) On information and belief, the Zimmer's are engaged in the construction of homes in Florida, Pennsylvania, Grand Cayman and are currently building a home in Turtle Cay, Grand Bahamas for two professional women who are U.S. citizens and reside in Arlington, Massachusetts. (Tab 1)

The Gargano's felt that an American contractor would best serve their interests and be more familiar with U.S. construction standards and customs, with the ancillary benefits of allowing the Gargano's an extensive array of building materials and furnishings from which to select and make for easier communication to more fully define the contractual responsibilities of all parties. (Tab 1) An added benefit to the Gargano's was that any need of further definition between the parties could be handled without having to travel to Grand Cayman. (Tab 1) Ronald Zimmer had agreed with the Gargano's that if additional meetings were necessary he would travel to Massachusetts. (Tab 1)

The initial conversations between the parties took place in Miami, Florida. The Zimmer's maintain a residence in Florida and own additional property in Lady Lake, Florida and have been engaged in the construction and sale of one-family houses in

2

Florida. Both the Zimmer's have been issued U.S. social security numbers and have Florida driver's licenses. Records obtained through an asset search reveal that the Zimmer's own numerous properties and undeveloped land throughout Florida and Pennsylvania, where they also function under the name Zimmer & Associates and maintain a personal residence.

### b. Execution of the Contract:

On or about April 17, 2002, a three-page written document was prepared in Florida and signed by Celita Zimmer on behalf of Zimmer & Associates, Ltd. (See, Tab 2) The document generally stated the work to be done, the quality of product to be used, as well as a schedule of payments. The contract was drafted by Zimmer & Associates, Ltd. and ultimately executed by Paul A. Gargano on April 22, 2002 in Massachusetts. The document was then sent by federal express to Ronald Zimmer, as per the Zimmer's Request. (Tab 1)

Work began on the house towards the end of 2002. As the Gargano's are residents of Massachusetts, communication between the parties was predominantly by way of fax, email and telephone. (Tab 1) Emails from Zimmer & Associates, Ltd. were invariably from Ronald Zimmer or his employee, "Renz". At all times, Ronald Zimmer held himself out as the general contractor and the Gargano's dealt exclusively with Ronald Zimmer throughout the construction. (Tab 1)

Work proceeded throughout the spring and summer of 2003 in a usual and customary manner, with the Gargano's making scheduled payments as work proceeded. Payments were made by the Gargano's at the request of Ronald Zimmer and payment

would be made through the Bank of New York with forwarding instructions as per the direction of Ronald Zimmer.

As this was a custom home that was being built, the Gargano's took a key role in the design and selection of materials for the home. The Gargano's performed these activities from their primary residences in Massachusetts. (Tab 1) The activities included providing the original design concepts and ordering modifications to the design as the work progressed; selecting supplies and components of the home, including floor tile, granite countertops, design and style of doors and hardware, kitchen cabinet design and layout, selection of crown molding and bathroom fixtures, all of which were selected in Massachusetts by the Gargano's and either shipped directly from Massachusetts companies to Cayman or purchased by the Gargano's and/or the Zimmer's suppliers in Florida. The Gargano's were involved in all phases of the construction and decision-making and this is evident from the 40 plus emails and faxes exchanged between the Gargano's and Zimmer's or their employees between May and December of 2003.

c.  **Demands for Payment:**

On or about October 10, 2003, Ronald Zimmer sent an email to Paul A. Gargano at his office in Cambridge, Massachusetts. In the email, Ronald Zimmer requested that the Gargano's wire an additional "**$100,000.00 for upgrades**"(emphasis added.) (See, Tab 3)

On October 28, 2003, Paul A. Gargano replied to Ronald Zimmer by email and requested copies of the invoices and an opportunity to compare the upgrade cost with the allowances that had already been built into the contract price. (See, Tab 4)

4

On October 29, 2003, Ronald Zimmer, sent copies of Zimmer & Associates, Ltd. invoices for flooring and moldings to Paul A. Gargano's office in Cambridge. However, the invoices from the actual suppliers were not included, nor were the invoices that were submitted to Customs and these documents would be necessary for a proper accounting. The Customs invoices are most significant; given the hefty fine for any inaccuracies reported in those invoices, their accuracy can be reasonably ensured.

On November 13, 2003, the Gargano's wired the last installment for payment pursuant to the contract. In an email dated November 12, 2003 from Paul A. Gargano to Ronald Zimmer, Paul A. Gargano noted that **final payment was being made in advance** of the time set forth in the original contract and in anticipation of the job being completed. (See, Tab 5)

On November 19, 2003, Ronald Zimmer sent Paul A. Gargano another email, again demanding the payment of costs for upgrades. (Tab 6) Paul A. Gargano replied to Ronald Zimmer by email on November 26, 2003, at which time he stated that he acknowledged that an overage existed but stated that before payment is made, the cost of upgrades must be compared to the allowances in the contract and itemized before payment is made with verification of invoices. (Tab 7)

On December 1, 2003, Ronald Zimmer replied by email to Paul A. Gargano, demanding that he wanted payment of $100,000.00 by December 5, 2003. (Tab 8)

On December 8, 2003 Celita Zimmer of Zimmer & Associates Ltd. sent a fax, to Paul A. Gargano demanding immediate payment of $100,000.00 and she further stated that she hoped that the Gargano's would not give her any trouble. (Tab 9) As of this date, despite repeated requests, neither Celita Zimmer, Ronald Zimmer nor Zimmer &

Associates, Ltd., had provided the Gargano's with the requested invoices from suppliers that related to overage costs, so that they could be compared against the contract allowances.

On December 12, 2003, a second letter was faxed to Paul A. Gargano from Celita Zimmer. This letter again demanded payment of $100,000.00 and stated that the Zimmer's had sought legal advice in the event that the Gargano's planned to default on any payments. (Tab 10) Celita Zimmer also stated that before she allowed any furniture to be delivered to the home, as a container of furniture had now been delivered to the site, she wanted the Gargano's or a representative to sign-off on the completion of the house in addition to the payment of $100,000.00. She further prevented Customs officials from examining the contents of the container. Celita Zimmer knew that the Gargano's wished to have furniture in the house for their arrival on December 27, 2003 and this demand put the Gargano's at the disadvantage of not being able to inspect the house personally. No prior inspection had ever been demanded by the Zimmer's, nor did the Gargano's ever request an inspection, pursuant to each request for payment in accordance with the payment schedule. Throughout the performance of the contract, the Gargano's relied on the good faith and integrity of the Zimmer's that the work was being completed as represented.

Prior to Celita Zimmer's demands, at no time had the Gargano's stated that they would not pay Zimmer & Associates, Ltd. In fact, the total contract price had been paid in full one month earlier during the course of construction. In fact, at times the Gargano's had made advance payment in the amount of double the scheduled payments

6

set forth in the contract, as an accommodation and as motivation for the timely completion.

The only outstanding issue was that of cost overages as a result of upgrades, which the Gargano's, not unreasonably, wanted an opportunity to review with the Zimmer's. The Zimmer's were aware that the Gargano's, along with their children and grandchild were scheduled to arrive in Cayman on December 27, 2003, the airfare was paid and the tickets were issued with the advance knowledge of the Zimmer's, and Paul A. Gargano stated to Ronald Zimmer that he would be happy to settle-up the accounts at that time upon a review of the expenses. (Tab 1)

Following the December 12, 2003 letter, Ronald Zimmer, via a telephone conversation with Paul A. Gargano in his Cambridge, Massachusetts office, threatened to stop all work if the $100,000.00 was not paid immediately. (Tab 1) Through a conversation with a Mr. Paul Nixon, the Gargano's learned that Ronald Zimmer further advised the appliance dealer, A.L. Thompson, not to deliver any of the appliances to the Gargano residence prior to being paid and told the appliance dealer that the Gargano's did not pay their bills. This was an utter falsehood but put increased pressure on the Gargano's to pay the Zimmer's for fear of the home not being ready for their arrival. The Gargano's wired full payment in advance to A.L. Thompson for the appliances and installation. Prior to the Zimmer's interference the Gargano's had an agreement with A.L. Thompson that payment would be made upon the Gargano's arrival in Cayman. The Gargano's were understandably nervous about the home not being completed given their previously scheduled travel plans and it was under this duress and the threats of the

work stopping, that on December 15, 2003, the Gargano's authorized the payment of $100,000.00 to Zimmer & Associates, Ltd. (Tab 1)

The $100,000.00 payment was made with the understanding that the house would be complete for the Gargano's arrival and that Ronald Zimmer would meet Paul A. Gargano in Cayman on December 27, 2003 to review the accounting and that any overpayment would be refunded to the Gargano's. Ronald Zimmer assented to this agreement and as acknowledgement of his assent, signed and returned, via fax, an email sent by Paul A. Gargano dated December 15, 2003, which set forth the parties understanding regarding the review of the overage costs and refund of any overpayment by the Gargano's. (Tab 11.)

On or about December 17, 2003 Ronald Zimmer and his wife Celita, left Cayman Island and traveled to Pennsylvania, where the Zimmer's own a home and remained there through the Christmas and New Year's holiday. (Tab 1) The Zimmer's left Cayman Island without informing the Gargano's of their departure and without obtaining an occupancy permit for the Gargano's house or completing the work. (Tab 1)

Telephone calls placed to Cayman Island on December 22, 2003 by Paul A. Gargano revealed that the house was not complete and that significant work was needed to make the house habitable, including the connection of electrical service and installation of appliances and that such work would not be completed by December 27, 2003. (Tab 1)

Given the status of the house, the Gargano's were forced to cancel their trip at a considerable expense and were denied the opportunity of being in their new home, which they had looked upon with great anticipation and for which they had expended

8

considerable sums of money. Furthermore, the Gargano's were caused to have to hire a new representative, Diane Henderson, to oversee the work to be completed. This was also done at a considerable expense to the Gargano's.

The fact that Ronald and Celita Zimmer, both individually and in their capacity as agents of Zimmer and Associates, Ltd. had dealt so unfairly and deceptively with the Gargano's, caused the Gargano's to file suit against Ronald and Celita Zimmer and Zimmer & Associates, Ltd. (Tab 1)

To date, the Zimmer's have not provided the Gargano's with any of the supporting invoices requested to substantiate the overage costs for which they collected $100,000.00 from the Gargano's. Further, the Gargano's have incurred significant costs to complete the work left undone by the Zimmer's, which further caused the Gargano's severe emotional distress. The Zimmer's are now demanding that the Gargano's pay an additional $40,000.00 for which there has been no verification or substantiation provided by the Zimmer's.

The Zimmer's have made additional demands for payment of the $40,000.00 through their attorney in Cayman Islands, Samuel Jackson, Esq. A request for the invoices and receipts related to overages was sent from Mr. Gargano's law office to attorney Jackson on February 2, 2004 but no documents have been received. To date, the Zimmer's have not cooperated in providing the Gargano's with the requested invoices and receipts for verification of payment. It is believed that Ronald Zimmer is also interfering with the release of invoices from the Sta Mar Co., which is a shipping and receiving company in Cayman Islands, as those invoices were initially promised to Mr. Gargano but are now being withheld.

**Argument:**

I. **Jurisdiction of this matter properly resides in the Courts of the United States in the Commonwealth of Massachusetts:**

   a. **The Law of Massachusetts will Govern the Dispute based on Choice of law Principles:**

It is a long established principle of common law that the law of the forum in which the contract became binding on the parties governs disputes arising out of a contract. In the present case, the contract was signed by Paul A. Gargano in Cambridge, Massachusetts. It was at this moment that the contract became effective and binding on the parties. In the case of Pritchard v. Norton, 106 U.S. 124 (1882) the Supreme Court of the United States held that there is a presumption that a contract is to be governed by the law of the place where it was made. See also, Jewett v. Keystone Driller Co., 282 Mass. 469, 185 N.E. 369)(1933)(Contract made in Massachusetts between a Massachusetts Corporation and a New Hampshire corporation is governed by Massachusetts law.) In both of the above-mentioned cases, the courts relied on common law in making their ruling.

More recently, state and federal courts in Massachusetts have begun to take a mulit-pronged approach to the question of which law will govern a dispute. The place where a contract is made is still a factor to be given significant weight. The other factors to be considered are (a) the relative interests of the states in hearing the case, (b) uniformity of result, (c)

maintenance of interstate order and simplification of judicial task. In the case of Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 473 N.E.2d 662 (1984), the Supreme Judicial Court adopted the multi-pronged approach for determining choice of law in contract cases. In Bushkin, the court examined all the relevant factors and finally turned to an examination of the justifiable expectations of the parties in determining whether to apply New York or Massachusetts law. In the present case, the justifiable expectation of the Gargano's was that the contract and disputes arising out of the contract, would be enforced by Massachusetts law, given that the contract was executed and became binding in Massachusetts. Further, Massachusetts provides a proper forum for redressing the Gargano's allegations of unfair and deceptive business practices through M.G.L. 93A, the Massachusetts Consumer Protection Act. The Massachusetts Consumer Protection Act is a derivative of federal legislation intended to provide a remedy for consumers who have been subjected to unfair and deceptive acts when dealing with businesses. Since all of the facts that give rise to the Gargano's consumer protection violations involve communications sent into Massachusetts by the Zimmer's, Massachusetts has an overriding interest in hearing this case as it involves actions that took place in Massachusetts to the financial detriment of its citizens, the Gargano's. As further support for the application of Massachusetts law, the property belonging to the Gargano's that is in Cayman, would, at the time of the Gargano's death, inure to the jurisdiction of Massachusetts as part of the estate assets and thus Massachusetts has an

interest in deciding any disputes involving the property that will ultimately pass through its probate system.

Based on common law precedent and choice of law principles, Massachusetts law should govern the controversy at hand, as Massachusetts has the greatest interest in hearing the dispute and offers a means for redressing all of Plaintiff's Complaints. Simplification of judicial task and expediency would therefore dictate that the proper jurisdiction for the case to be heard is Massachusetts.

### b. Massachusetts has personal jurisdiction over Ronald Zimmer, Celita Zimmer and Zimmer & Associates, Ltd. as they transacted business within Massachusetts

The Complaint deals almost entirely with the grossly unfair and deceptive way in which the Zimmer's dealt with the Gargano's by repeatedly demanding the payment of $100,000.00 for upgrades, without the benefit to the Gargano's of a proper accounting. The Gargano's paid the $100,000.00 prior to a final accounting because of the threat of a work stoppage but also based on the representation from Ronald Zimmer that the house would be complete and that a proper accounting would be undertaken when the Gargano's arrived in Cayman on December 27, 2003 and that any overpayment would be refunded to the Gargano's at that time. The fact that the Zimmer's left Cayman Island immediately after receipt of the money and without finishing the job as promised and further without notifying the Gargano's of their departure, constitute additional acts of deception that have caused the Gargano's to incur a considerable expense over and above the disputed $100,000.00.

Personal Jurisdiction over the Zimmer's is proper in Massachusetts, as all of the correspondence involving the threats and demands made by the Zimmer's that give rise to the Consumer Protection Act claims were sent by fax or email to Paul A. Gargano's office in Cambridge, Massachusetts. The federal district court and the Supreme Judicial Court of Massachusetts have held that such contacts constitute the "transaction of business" in Massachusetts and will satisfy the requirements for jurisdiction over a foreign individual or entity by a court in Massachusetts pursuant to the Massachusetts Long Arm Statute. See, Hahn v. Vermont Law School, 698 F.2d 48, 50 (1 Cir. 1983)(First Circuit held that that the actions of defendant in mailing to Plaintiff in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long Arm Statute) See also, Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193 (1st Cir. 1980)(First Circuit held that the Defendant's mailing two letters to Plaintiff in Massachusetts demanding that it cease and desist infringing on its patent were sufficient contacts for Massachusetts to take jurisdiction over the foreign Defendant.) In the case of Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (2003), the plaintiff pointed to four telephone calls, five emails and three faxes sent by the Defendant to the Plaintiff in Massachusetts over a three month period as evidence of sufficient contacts to establish personal jurisdiction with in Massachusetts over the Defendant. The court noted that even just a few acts on the defendant's part can suffice to satisfy the long arm statute and that a Defendant need not be physically present in a state to transact business in the state. Id.

The facts in Workgroup, are strikingly similar to the facts in this case. In the present case the Zimmer's sent six emails and faxes over a three month period into Massachusetts demanding payment of $100,000.00 and then promising by way of fax transmission on December 15, 2003, to meet with the Gargano's for the purpose of a detailed accounting, then failing to do so.

In the case of, The Carlson Corporation v. University of Vermont, 380 Mass. 102 (1980), The Carlson Corp. brought suit in Massachusetts against the University of Vermont. The University moved to dismiss the case based on a lack of personal jurisdiction. The Supreme Judicial Court of Massachusetts held that where the contract was made in Massachusetts and the contract involved a commercial transaction over a prolonged period of time with a Massachusetts Corporation, pursuant to a written contract signed in the state, that Massachusetts had an interest not only in providing a forum for its residents, but also in enforcing business transactions consummated within its boundaries. Id. at 108. In the present case the contract was consummated by the Gargano's in Massachusetts. Once consummated, the contract was performed over a period of almost two years, during which time the Zimmer's and Zimmer & Associates were sending frequent correspondence into Massachusetts, at least 25 emails and faxes based on records of the Gargano's, including the email and fax correspondence regarding their demands for $100,000.00 in upgrade costs, which is central to the Gargano's complaint. The Carlson court emphasized that where a nonresident defendant's contacts with Massachusetts had substantial commercial consequence in this state, personal jurisdiction was found, notwithstanding the absence of actual physical presence in this

14

will govern this dispute. Accordingly, the proper forum for this matter rests with this honorable court.

Respectfully Submitted
By the Plaintiff,

*/s/ Paul A. Gargano*

Paul A. Gargano
BBO# 185560
Timothy Scannell
BBO# 655453
Gargano & Associates
4 Canal Park
Cambridge, MA 02141
617-621-1100

16

state. Id. at 107. In the present case, the construction contract at hand had a total value exceeding $1.1. million and the amount in dispute exceeds $100,000.00.

The Carlson court concluded by considering the fact that the University chose to do business with a Massachusetts resident when it was within the University's power to choose not to transact any business within the Commonwealth. Id. at 109. The court concluded under these circumstances it was not unfair to cause the university to defend the action in Massachusetts. Id. at 109. Similarly, the Zimmer's could have chose not to transact business outside of the Cayman Islands but chose to contract with the Gargano's in Massachusetts.

Ronald and Celita Zimmer have breached their contractual obligations with willful bad faith and deception and should not be allowed to avoid answering for their actions in Massachusetts. It would be a further aggravation to the harm and financial loss sustained by the Gargano's to compel them to bring suit in another forum when the actions of the Zimmer's are based on correspondence sent into Massachusetts. This would not be a novel situation as other disputes involving construction in the Cayman Islands have been filed in the United States. Most Recently, a case involving a dispute over construction of a hotel in Cayman was brought in the United States against the Ritz Carlton Hotels. (Tab 12, Cayman Net Newspaper, dated 2/10/04)

**CONCLUSION:**

Personal Jurisdiction exists over the Defendants in this case based on their repeated contacts with Massachusetts both individually and as representatives of Zimmer & Associates, Ltd. Further, Choice of Law principles dictates that Massachusetts law

15