UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL A. GARGANO,<br><br>Plaintiff,<br><br>v.<br><br>RONALD ZIMMER, ZELITA ZIMMER,<br>and ZIMMER & ASSOCIATES,<br><br>Defendants. | Civil Action No. 03-12605-NG |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Ronald Zimmer ("Dr. Zimmer"), Celita Zimmer ("Ms. Zimmer"), and Zimmer & Associates Ltd. ("Zimmer & Associates") (collectively, the "Zimmers") submit this memorandum of law in support of their motion to dismiss the action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). The Zimmers offer the affidavits of Dr. Zimmer and Ms. Zimmer[1] to demonstrate that there are <u>no contacts</u> with the Commonwealth of Massachusetts such that this Court could exercise personal jurisdiction under the Massachusetts long-arm statute. See Mass. G.L. c. 223A, § 3. As will be demonstrated below, the lack of any contacts with the Commonwealth of Massachusetts also makes the exercise of personal jurisdiction improper under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The filing of this action, and all prior unsuccessful attempts to trick the Zimmers into appearing here, are simply hardball tactics to avoid paying a legitimate debt.

---

[1] The Affidavit of Celita Zimmer ("Zimmer Aff.") was filed on March 23, 2004, in connection with Defendants' Opposition to Plaintiff's Requests for Default Pursuant to Rule 55(a). For the Court's convenience, a copy of Ms. Zimmer's affidavit is attached hereto as Exhibit 1. The affidavit of Dr. Zimmer (the "Second Zimmer Aff.") is filed herewith.

## SUMMARY OF POSITION

The plaintiff, Paul A. Gargano, approached the Zimmers in the Cayman Islands and asked them to build him a lavish home on the beach in Cayman Kai, Grand Cayman. Zimmer & Associates completed that home in December 2003. In a transparent attempt to gain leverage against the Zimmers, so that he can avoid paying them amounts clearly due and owing, the plaintiff now seeks to hail the Zimmers from their foreign residence (the Cayman Islands) into this Court. Because the Zimmers are utterly without a connection to Massachusetts, there is absolutely no basis for this Court to exercise personal jurisdiction over them. The judicial system of the Cayman Islands, a British territory, is the appropriate forum, should the plaintiff be serious about litigating his spurious claims.

## PROCEDURAL HISTORY

The plaintiff filed this action on December 24, 2003. This Court dismissed the Complaint on January 5, 2004, for want of subject matter jurisdiction.

On January 22, 2004, this Court allowed the plaintiff to amend his Complaint. That same day, the plaintiff filed a Motion to Perfect Proof of Service. This Court denied that motion on February 3, 2004.

On February 24, 2004, the plaintiff filed affidavits of service with this Court. Id. On March 8, 2004, the plaintiff filed, as to each defendant, Plaintiff's Request for Default Pursuant to Rule 55(a). The plaintiff alleged that proper service had been made, even though he knew that a process server merely had left the summonses and copies of the Amended Complaint at a *vacant* vacation house in southwestern Pennsylvania.

On March 23, 2004, the Zimmers and their counsel (the undersigned) appeared for the limited purpose of opposing the Requests for Default, and filed Defendants' Opposition to

2

Plaintiff's Requests for Default Pursuant to Rule 55(a) ("Opposition"). The Court denied the plaintiff's Requests for Default on April 4, 2004, stating:

> There is no default because no valid service has been effected under any prong of the Rule. One final note: the Court is deeply concerned about the allegations that the plaintiff misrepresented the Court's actions to the defendants. Should that conduct continue, the Court will take appropriate action.

On April 27, 2004, the plaintiff moved for an additional 60 days by which to serve the Complaint. The Court has not ruled on that motion. On June 1, 2004, a Bailiff of the Grand Court in the Cayman Islands served Celita Zimmer with summonses for each of the defendants and copies of the Amended Complaint. Service was effectuated at the registered office of Zimmer & Associates, in Grand Cayman.

## SUMMARY OF RELEVANT FACTS

The plaintiff is a Massachusetts resident. Complaint, ¶ 1. He is a lawyer, and owns multiple residences in Massachusetts and elsewhere. He has owned property in the Cayman Islands since at least the early 1990s. See Zimmer Aff., ¶ 4.

Zimmer & Associates is a construction company that builds high-end homes. Id., ¶ 2. It is a Caymanian registered Ordinary Resident Company, with a principal place of business (and its only office) in Georgetown, Grand Cayman. Id., ¶ 2. It has never done any work in the United States. Id., ¶ 3; Second Zimmer Aff., ¶ 3. Zimmer & Associates also has never solicited business or advertised in the United States (in fact, it does not advertise at all), and has never maintained an internet site. Second Zimmer Aff., ¶ 3.

Ms. Zimmer is a Caymanian citizen. She and her husband, Dr. Zimmer (a Caymanian by grant of status), are full-time residents of the Cayman Islands, and have been for nearly twenty

3

years. Zimmer Aff., ¶ 4; Second Zimmer Aff., ¶ 1.[2] Dr. and Ms. Zimmer have not been to Massachusetts since before they were married, more than twenty years ago. Second Zimmer Aff., ¶ 4.

Several years ago, the plaintiff approached Dr. Zimmer and mentioned that he wanted to tear down his existing house and build a new one. See Second Zimmer Aff., ¶ 5. In April 2002, Zimmer & Associates contracted to build a house for the plaintiff at Cayman Kai, Grand Cayman. The signatories to the contract, which was discussed, drafted, agreed-to, and executed in Grand Cayman, were the plaintiff and Ms. Zimmer (on behalf of Zimmer & Associates). See Zimmer Aff., ¶ 7; Second Zimmer Aff., ¶¶ 5-8. A copy of the contract is attached to Dr. Zimmer's affidavit as Exhibit A. The first paragraph of the contract clearly demonstrates that the place of contracting was Grand Cayman. See Second Zimmer Aff., ¶ 7.

Zimmer & Associates began work on the plaintiff's house in November 2002. See Zimmer Aff., ¶ 8. The plaintiff made payments under the contract by wiring money to Zimmer & Associates' bank in the Cayman Islands. Id.; Second Zimmer Aff., ¶ 8. The plaintiff, who was in Massachusetts during the construction of his home, communicated with the Zimmers primarily through email. Communication was infrequent; on average, there was one email exchange every two weeks. Second Zimmer Aff., ¶ 9. Consistent with an agreed-upon time frame for completing the house (i.e., 12 to 14 months), the house was completed in December 2003. Zimmer Aff., ¶ 9.

---

[2] Remarkably, notwithstanding that Mr. Gargano knows the Zimmers live in Grand Cayman, and knows that Zimmer & Associates is a Caymanian company, Mr. Gargano alleges in the Amended Complaint that the Zimmers "reside[] at 292 Shipe Run Road, Amwell Township, Pennsylvania" and that Zimmer & Associates has "a principal place of business" there. See Amended Complaint, ¶¶ 2-4. Mr. Gargano is well aware that this address is a seldom used vacation house owned by the Zimmers in southwestern Pennsylvania. See Zimmer Aff., ¶ 6. These allegations alone raise Rule 11 concerns.

4

This litigation arose after Ms. Zimmer wrote the plaintiff on December 12, 2003 about her concerns that the plaintiff was going to default on his payment obligations. Id.[3] Ten days later, the plaintiff filed a twelve-count Complaint (later amended) against the Zimmers in this Court.

The Amended Complaint alleges (falsely) that the plaintiff's multi-million dollar home was not completed in time and that the Zimmers "demanded further payments from the Plaintiff in excess of the contract allowances." Amended Complaint, ¶ 13; Second Zimmer Aff., ¶ 12. The plaintiff alleges he was harmed because he "had to cancel his planned Christmas holiday vacation to his house in the Grand Cayman Islands." Amended Complaint, ¶ 14.

The plaintiff has alleged counts for violation of G.L. c. 93A, wrongful interference with a contractual agreement, breach of contract, and fraud in the inducement to enter into a contract.

Notably, the Amended Complaint makes no reference to Massachusetts (or even the United States) at all, other than it being the place where the plaintiff resides.

## ARGUMENT

In a diversity case, a federal court has jurisdiction only if a court of the state in which the federal court sits would have jurisdiction. See Shipley Co. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990). A Massachusetts court may exercise personal jurisdiction over a foreign defendant only when it is authorized by the Massachusetts long-arm statute, G.L. c. 223A, § 3, and when the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. See Cunningham v. Ardox, Inc., 40 Mass. App. Ct. 279, 281 (1996).

---

[3] Ms. Zimmer's concerns were well-founded, as the plaintiff has not made the final payments under the contract. See Second Zimmer Aff., ¶ 11.

5

I. **The Plaintiff Have Not Established Jurisdiction Over The Defendants Under The Massachusetts Long-Arm Statute.**

The Massachusetts long-arm statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:
>
> (a) transacting any business in the commonwealth; ...
>
> (c) causing tortious injury by an act or omission in this commonwealth; or
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....

G.L. c. 223A, § 3.

It is the plaintiff's burden to establish sufficient facts on which personal jurisdiction is based. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). The plaintiff must prove specific facts to support its claim. See Lavalle v. Parrott-Ice Drink Prods. of Am., Inc., 193 F. Supp. 296, 298 (D. Mass. 2002). The plaintiff cannot even come close to meeting his burden.

**A.     The Zimmers have never transacted business in the Commonwealth.**

To establish personal jurisdiction under § 3(a) of the statute, a plaintiff must prove that a defendant transacted business in Massachusetts *and* that the harm allegedly suffered by the plaintiff arose from such transaction of business. See Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). The test under § 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party. See Lyle Richards Intern., Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997) (affirming dismissal where "most performance required from Lyle under the Agreement was to be rendered *outside* Massachusetts").

In the instant case, there are not even fortuitous contacts with Massachusetts. All of the relevant facts point to the Cayman Islands. For example: the Zimmers live in the Cayman Islands; Zimmer & Associates is located in and does business only in the Cayman Islands; the plaintiff's house is located in the Cayman Islands; and, the contract between the plaintiff and Zimmer & Associates was discussed, drafted, agreed-to, executed, and performed in the Cayman Islands. See Zimmer Aff, ¶¶ 2-7; Second Zimmer Aff., ¶¶ 1-8.

As noted above, the Zimmers have never transacted any business in Massachusetts. They certainly did not "attempt[] to participate in the Commonwealth's economic life." See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1087 (1st Cir. 1992). The Zimmers also have never solicited business in Massachusetts. See Lyle Richards, 132 F.3d at 113 ("Often, the 'transacting business' test is importantly informed by ascertaining whether the nonresident party initiated or solicited the business transaction in Massachusetts."). Zimmer & Associates builds homes exclusively in the Cayman Islands. The *only* connection to Massachusetts is that the plaintiff resides here, and that he was here while the house was being built (and infrequently communicated with the Zimmers regarding it).

In sum, the plaintiff cannot conceivably demonstrate that the Zimmers "transacted business" Massachusetts. See, e.g., Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 153-154 (1978) (no jurisdiction under § 3(a) where Massachusetts buyer sued Florida seller who had done little more than cause goods to be delivered to Massachusetts); Telco Communications, Inc. v. New Jersey State Firemen's Mutual-Benevolent Assoc., 41 Mass. App. Ct. 225, 231 (1996) (contact between Massachusetts-based corporation and New Jersey corporation relative to performance of contract in New Jersey was insufficient to confer jurisdiction); Lyle Richards Intern., Ltd. v. Ashworth, Inc., 132 F.3d 111, 112-114 (1st Cir. 1997) (no jurisdiction even

though defendant signed contract with Massachusetts company, communicated "two or three time a week" with Massachusetts plaintiff, and sent representatives to three trade shown in Massachusetts, twice accompanied by plaintiff's employee); Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987) (no jurisdiction in South Dakota over New York law firm even though law firm made numerous phone calls and mailings to former client located in South Dakota and conducted a three day fact-finding mission in South Dakota relative to Maryland litigation).

### B. The Zimmers have not caused tortious injury in the Commonwealth.

To establish personal jurisdiction under § 3(c) of the statute, a defendant must have committed an act or omission in the Commonwealth that caused tortious injury. See Walsh v. National Seating Co., 411 F. Supp. 564, 570 (D. Mass. 1979) (plaintiff failed to meet the "within the commonwealth" requirement where negligent design or manufacture of defendant's bus seat occurred at defendant's Ohio plant rather than within Commonwealth). "This section of the long-arm statue requires that defendants' tortious conduct occur in Massachusetts, rather than simply affect a Massachusetts resident." Better Boating Assoc., Inc. v. BMG Chart Prods., Inc., 1998 WL 408976, at *5 (Mass. Super. Ct. July 10, 1998) (Lauriat, J.).

The plaintiff cannot establish that *any* of the Zimmers' conduct occurred in Massachusetts, such that there cannot be jurisdiction under § 3(c).

### C. The Zimmers have not engaged in any persistent course of conduct in the Commonwealth.

To establish personal jurisdiction under § 3(d) of the statute, the plaintiff must allege a tortious injury in Massachusetts arising out of an act or omission outside the Commonwealth. In addition, the statute requires that the defendant do or solicit business, or engage in any other

persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this commonwealth. G.L. c. 223A, § 3(d).

This section of the statute is predicated on "general jurisdiction." Connecticut Nat'l Bank v. Hoover Treated Wood Prods., 37 Mass. App. Ct. 231, 233 n.6 (1994). General jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers, 960 F.2d at 1088.

Zimmer & Associates has *never* conducted business in Massachusetts, nor have the Zimmers at any time. Second Zimmer Aff., ¶¶ 3-4. The Zimmers have not even physically been in Massachusetts since before they were married, more than twenty years ago. Id., ¶ 4. There is absolutely no evidence of any "continuous and systematic activity" that conceivably could allow the plaintiff to establish general jurisdiction over the Zimmers for purposes of the Massachusetts long-arm statute.

## II. Exercise of Personal Jurisdiction Over The Zimmers Would Violate the Due Process Clause.

The Due Process Clause of the United States Constitution requires that there be sufficient minimum contacts between the defendant and the forum such that the exercise of personal jurisdiction over a defendant comports with "traditional notions of fair play and substantial justice." Brookfield Mach., Inc. v. Calbrit Design, 929 F. Supp. 491 (D. Mass. 1996) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Such "minimum contacts" are not present here.

The First Circuit employs a three-part test to determine whether sufficient contacts exist:

1. The claim underlying the litigation must directly rise out of, or relate to, the defendant's in-forum activity;

2. The defendant's in-state contacts must represent a purposeful availment of the privileges of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and

3. The exercise of jurisdiction must, in light of certain "gestalt" factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.

### A. The plaintiff's claim is not related to any activity here.

The Zimmers, as discussed above, did not have any contact with the Commonwealth of Massachusetts. The focus of this "relatedness" requirement is on "the nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994); Fairview Mach. & Tool Co. v. Oakbrook Intern., Inc., 56 F. Supp. 2d 134, 138 (D. Mass. 1999). A plaintiff's action must directly arise from specific contacts between a defendant and the forum state. Tatro, 416 Mass. at 772.

As noted above, all of the Zimmers' conduct occurred in Grand Cayman, where the plaintiff requested his luxury house to be built. There is no nexus to speak of. The plaintiff therefore cannot satisfy the "relatedness" prong of the minimum contacts analysis.

### B. The Zimmers did not purposefully avail themselves of the privileges of conducting activities in the Commonwealth.

The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon the defendant's "random, isolated, or fortuitous" contacts with the forum state. Fairview Mach., 56 F. Supp. 2d at 139. The Zimmers have not had "random" or "isolated" contacts with Massachusetts; they have had none.

The purposeful availment analysis focuses on two elements: foreseeability and voluntariness. Ticketmaster-New York, 26 F.3d at 207. Here, it could hardly be more unforeseeable for the Zimmers to be haled into a Massachusetts court, where the *plaintiff*
10

*solicited them* to build a house in Grand Cayman, where they live. Clearly, the exercise of jurisdiction over the Zimmers in Massachusetts would not be fair, just or reasonable. See, e.g., Telco Communications, Inc. v. New Jersey State Fireman's Mutual Benevolent Assoc., 41 Mass. App. Ct. 225 (1996) (court refused to exercise jurisdiction over New Jersey corporation with "no office of agent or other such 'presence' in Massachusetts," where agreement at issue was first and only contractual relationship between New Jersey defendant and plaintiff).

### C. The "gestalt" factors weigh in favor of declining jurisdiction.

The "gestalt" factors mentioned in the third-part of the test are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. United Elec. Workers, 960 F.2d at 1088.

Courts, in conducting minimum contacts analysis, consider this "panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal." Ticketmaster-New York, 26 F.3d at 209. The "gestalt" factors are not ends in themselves, but are, collectively, a means of assisting courts in achieving substantial justice. Id. In close cases, these factors may tip the constitutional balance. Id.

As to the first factor, the burden of appearing in Massachusetts would be substantial for the Zimmers. The Zimmers have not been to Massachusetts in over twenty years. They are full time residents of the Cayman Islands, and are the parents of four young children. See Zimmer Aff., ¶ 4. In contrast, the plaintiff owns a luxury home in Grand Cayman (valued at $2.6 million) and visits there every year for long stretches of time. See Second Zimmer Aff., ¶¶ 5, 12.

11

The second factor – Massachusetts' interest in adjudicating this lawsuit – also weighs in favor of the Zimmers because Massachusetts has absolutely no interest in this dispute. The subject matter of the dispute is the construction of a luxury home in the Cayman Islands. The laws or rules that govern the planning and construction of the plaintiff's home are Caymanian laws and rules. Moreover, the plaintiff solicited the Zimmers, and the contract was discussed, drafted, agreed-to, and executed in Grand Cayman. Zimmer Aff., ¶ 7; Second Zimmer Aff., ¶ 5-8. The only jurisdiction with any interest in this dispute is the Cayman Islands.

Although the plaintiff has chosen Massachusetts as his forum, it is not the most convenient venue in which to try the case. The defendants, third party witnesses, the subject matter (the house), and all relevant documents are in Grand Cayman.

Finally, the fourth and fifth factors (the interest of the judicial system and the common interest of all sovereigns) weigh in favor of the Zimmers because the interest of the judicial system and public policy are best served by adjudicating disputes in the forum where the alleged activity occurred. In this case, all the relevant activity occurred in the Cayman Islands.

In sum, the "gestalt" factors weigh in favor of dismissing the action for lack of personal jurisdiction because requiring the Zimmers to litigate in Massachusetts would violate notions of fair play and substantial justice.

## CONCLUSION

For the reasons stated above, the plaintiff cannot satisfy his burden in proving that the Zimmers transacted business in the Commonwealth, or caused a tortious injury within the Commonwealth. In addition, the evidence is insufficient to establish that the Zimmers had minimum contacts with the Commonwealth such that the exercise of personal jurisdiction over

them would comport with traditional notions of fair play and substantial justice. Therefore, the Zimmers respectfully request that this Court dismiss the Amended Complaint, with prejudice.

                                RONALD ZIMMER, CELITA ZIMMER, and ZIMMER & ASSOCIATES

                                By their attorneys,

                                */s/ Thomas F. Maffei*

                                Thomas F. Maffei (BBO 313220)
                                Scott McConchie (BBO 634127)
                                GRIESINGER, TIGHE & MAFFEI, LLP
                                176 Federal Street
                                Boston, Massachusetts 02110-2214
                                (617) 542-9900

Dated: June 21, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/~~hand/facsimile~~ on:
6/21/04  SMcC