UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL A. GARGANO,

    Plaintiff,

v.

RONALD ZIMMER, ZELITA ZIMMER,
and ZIMMER & ASSOCIATES,

    Defendants.

Civil Action No. 03-12605-NG

## AFFIDAVIT OF RONALD ZIMMER

Ronald Zimmer, on oath, deposes and says as follows:

1. I have been named a defendant in the above-captioned action. I was born in the United States, but have been a permanent resident of the Cayman Islands for nearly twenty years. My wife, Celita Zimmer, was born in the Cayman Islands and is a Caymanian citizen. I am a Caymanian by grant of status.

2. My wife Celita is the principal of Zimmer & Associates Ltd. ("Zimmer & Associates"), which is a construction company that builds high-end homes in the Cayman Islands. I am an employee of the company.

3. Zimmer & Associates is a Caymanian registered Ordinary Resident Company, with a principal place of business in Georgetown, Grand Cayman. Zimmer & Associates never has had any offices in the United States, never has done any work in the United States, never has solicited business or advertised in the United States (in fact, it does not advertise at all), and never has maintained an internet site. Zimmer & Associates never has conducted or transacted any business in Massachusetts. As far as I

know, other than the Garganos, no residents of Massachusetts have done business with Zimmer & Associates.

4. Neither my wife nor I have ever done or transacted any kind of business in Massachusetts. Moreover, we have never solicited business from Massachusetts residents, we have never advertised in Massachusetts, and we have not visited Massachusetts since before we were married (i.e., more than twenty years ago!).

5. I have known Mr. Gargano personally since the early 1990s, as Mr. Gargano owns property close to our home in Grand Cayman. Mr. Gargano comes to the Cayman Islands every year for long stretches of time (i.e., weeks or months at a time). Several years ago, Mr. Gargano approached me and mentioned that he wanted to tear down his existing house and build a new one on the beach in Grand Cayman.

6. In April 2002, Zimmer & Associates contracted to build a house for Mr. Gargano at Cayman Kai, Grand Cayman. The signatories to the contract were Mr. Gargano and my wife, on behalf of Zimmer & Associates. The contract was drafted, agreed-to, and executed in Grand Cayman. A copy of that contract (a letter agreement) is attached hereto as Exhibit A.

7. The first paragraph of Exhibit A clearly demonstrates that the discussions leading up to the drafting of the contract took place in Grand Cayman:

> I refer to our last conversation on Thursday, April 11, 2002, wherein we finally concluded our discussions. We agreed that as soon as possible our firm Zimmer & Associates Ltd. would proceed with the demolition of your existing house and upon receiving planning approval start the construction of your new house and garage.

8. Mr. Gargano agreed-to and accepted the contract in Grand Cayman on April 17, 2002, on the same day as my wife. For unknown reasons, he then took the

original contract home to Massachusetts. We never received the original contract back from Mr. Gargano. Instead, he sent us a copy that he apparently signed and dated in Massachusetts (i.e., the contract in our possession has an *original* signature of Mr. Gargano, dated April 22, 2002, and a *photocopied* signature of Celita Zimmer, dated April 17, 2002).

9. During the course of the project, Mr. Gargano communicated with Zimmer & Associates (usually with me or Renz Pachba, an employee of Zimmer & Associates) almost exclusively by email. I would estimate that, on average, there was one email exchange every two weeks.

10. Zimmer & Associates completed Mr. Gargano's house in Grand Cayman in December 2003. As Exhibit A shows, the original contract price was US$1,120,000. The contract specified that payments would be made in stages, according to a schedule (i.e., after certain benchmarks were completed, a payment would be made). Mr. Gargano has not made the final payment of US$40,000, which was due following "Completion of house and garage and site clean-up."

11. During the course of the project, Mr. Gargano asked Zimmer & Associates to do work that was not specified in the contract. Zimmer & Associate performed the extra work as requested, and these extras were billed out at US$144,000. Mr. Gargano paid Zimmer & Associates US$140,000 for the extra work. Thus, Mr. Gargano still owes Zimmer & Associates US$44,000 ($40,000 for the final stage and $4,000 for extras).

12. Mr. Gargano's house recently has been appraised. Its fair market value is US$2,600,000.

Signed under the pains and penalties of perjury this _18_ day of June, 2004.

_____
Ronald Zimmer

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/~~hand/facsimile~~ on:
6/21/04   Smicc