UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS, ss.                    C.A. No.  03-cv-12605

| | |
|---|---|
| PAUL A. GARGANO<br>                    Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| RONALD ZIMMER, CELITA ZIMMER | ) |
| and ZIMMER & ASSOCIATES | ) |
| Defendants | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**Factual Background:**

This case arises out of dealings between Paul A. and Sheila K. Gargano (hereinafter, the Gargano's) and Ronald and Celita Zimmer, (hereinafter, the Zimmer's) both individually and in their capacity as agents of Zimmer & Associates  Paul and Sheila Gargano are citizens of the United States and residents of Massachusetts. Ronald Zimmer is a U.S. citizen[1].  On information and belief Celita Zimmer is a naturalized citizen of the U.S. and has both a U.S. passport and a Caymanian passport.  Their 4 minor children were all born in the U.S. and attend school in the United States.  (Tab 1, Affidavit of Paul Gargano, para. 4)

---

[1] Despite his statement in his affidavit that he is Caymanian by "grant of status" this does not confer full Caymanian citizenship on him.

Conversations regarding the possibility of the Zimmer's building a home for the
Gargano's first began in the later part of 2000 when the Gargano's had a chance meeting
with Ronald Zimmer at an airport in Miami, Florida. ( Id. at para. 7) Ronald Zimmer was
in the construction field and the topic of building a home for the Gargano's came up in
the course of conversation. After the initial conversation and upon the Gargano's return
to Massachusetts, Paul Gargano was actively and repeatedly solicited in Massachusetts
by Ronald Zimmer via telephone conversation and facsimile to build a home for the
Garganos in Cayman. ( Id. at para. 8) The solicitations continued throughout 2001 with
Ronald Zimmer contacting Paul Gargano by fax and/or telephone from Florida,
Pennsylvania and Cayman Islands. (Id at para. 9)  Ronald Zimmer even procured an
architect from Florida, William Tucker, to create some preliminary plans for the
Gargano's review in order to further entice them into building a home. (Tab 14, Letter
from Ronald Zimmer to Paul A. Gargano, March 26, 2002)  Ronald Zimmer was
aggressive in his solicitation and in his bidding and was ultimately able to persuade the
Gargano's that building a home was feasible. (Id. at para. 17)

Ronald Zimmer, was known to the Gargano's to be an American citizen and
contractor who built homes in the Cayman Islands. ( Id. at para 12-14)  The Gargano's
desired to contract with an American contractor specifically and they knew that Ronald
Zimmer was an American citizen with homes in the United States and was involved in
construction in the United States. (Id.)  On information and belief, the Zimmer's own
property in Florida, Pennsylvania, Grand Cayman and are currently building a home in
Turtle Cay, Grand Bahamas for two professional women who are U.S. citizens and reside

in Arlington, Massachusetts. (Id.) The Zimmer's travel on US passports and go freely between the United States and Cayman Island.

The Gargano's felt that an American contractor would best serve their interests and would be more familiar with U.S. construction standards and customs. Ronald Zimmer was also willing to work with the Gargano's in selecting building materials and furnishings from Massachusetts suppliers. (Id. at para 12-16) An added benefit to the Gargano's was that any need of further definition between the parties could be handled without having to travel to Grand Cayman. Ronald Zimmer had even offered to the Gargano's that if additional meetings were necessary he would travel to Massachusetts. (Id. at para. 16)

As their passports will demonstrate, the Zimmer's frequently travel into the United States for business and leisure, including traveling to Florida and Pennsylvania, where they own a residence. Based on further information and belief Ronald Zimmer is registered to vote in Florida and is active in churches in both Florida and Pennsylvania. Celita Zimmer also has a Florida driver's license. Based on this information and knowledge that the Zimmer's divide their time between the United States and Cayman Islands. The Plaintiff attempted service of process on the Defendant's both in Florida and Pennsylvania but the defendant's evaded service in Pennsylvania when they refused to receive paperwork at the sherriff's office and challenged service in Florida when the complaint and summons were served on Ronald Zimmer's father, who is also named Ronald.

### b. Execution of the Contract:

On or about April 17, 2002, a three-page written document was prepared and signed by Celita Zimmer on behalf of Zimmer & Associates (Tab 2, Contract executed by Celita Zimmer and Paul Gargano)  All negotiations leading up to the execution of the contract had been between the Gargano's and Ronald Zimmer but when it came time to execute the contract Ronald Zimmer stated that his wife would sign on behalf of Zimmer & Associates. (Tab 1, para. 20)  Based on Caymanian records Zimmer & Associates was organized in April 2002 just prior to the creation of this contract. (Tab 3, Record of Caymanian Government re. formation of Zimmer & Associates )  The contract document generally stated the work to be done, the quality of product to be used, as well as a schedule of payments.  All payments were to be made in US dollars.

The contract was ultimately executed by Paul A. Gargano on April 22, 2002 in Massachusetts. (Tab 1, para.22)  Despite any assertions to the contrary by Ronald Zimmer in his affidavit filed with this Court, the contract was not negotiated in Cayman Islands but rather was the product of over a year's worth of communication and correspondence between Ronald Zimmer and the Gargano's, with Ronald Zimmer contacting the Gargano's in Massachusetts from his various points of travel.  Further, Paul Gargano's passport clearly indicates that he was not in Cayman Island on April 17, 2002 as Ronald Zimmer asserts in his affidavit. (Tab 1, para. 23)  Mr. Gargano was in fact in Massachusetts where he received the contract, signed it and returned it by Fed-Ex.

Work began on the house on or about the later part of 2002.  As the Gargano's are residents of Massachusetts, communication between the parties was by way of fax, email and telephone. (Tab 1, para. 25) Emails were invariably from Ronald Zimmer or his

4

employee, "Renz". At all times, Ronald Zimmer held himself out as the general contractor and the Gargano's dealt with Ronald Zimmer throughout the construction. (Tab 1, para 27)

Work proceeded throughout the spring and summer of 2003 in a usual and customary manner, with the Gargano's making scheduled payments as work progressed. (Id. at para. 30) Authorization for payments were issued by the Gargano's at the request of Ronald Zimmer and payment would be made to Zimmer & Associates through the Bank of New York.

As this was a custom home that was being built, the Gargano's worked closely with Ronald Zimmer in the design and selection of materials for the home, with communications going back and forth from Cayman Island to Massachusetts. (Id. at para. 27) The activities included providing the original design concepts and ordering modifications to the design as the work progressed; selecting supplies and components of the home, including floor tile, granite countertops, design and style of doors and hardware, kitchen cabinet design and layout, selection of crown molding and bathroom fixtures, all of which were selected in Massachusetts by the Gargano's and either shipped directly from Massachusetts companies to Cayman or purchased by the Gargano's and/or the Zimmer's suppliers in Florida. These tasks were undertaken with the cooperation and input of Ronald Zimmer who continued to advise the Gargano's and help them make decisions as to manufacturers and products such as windows and flooring. Id. Ronald Zimmer and the Gargano's continued to communicate by way of fax, email and telephone throughout the course of the project and this is evidenced from the 40-plus emails and

5

faxes that were sent between Massachusetts and Grand Cayman from May to December
of 2003.

**c.    Demands for Payment:**

On or about October 10, 2003, Ronald Zimmer sent an email to Paul A. Gargano
at his office in Cambridge, Massachusetts.  In the email, Ronald Zimmer made a general
request that the Gargano's wire an additional **"$100,000.00 for upgrades"**(emphasis
added.) (Tab 4, Email dated October 10, 2003)

On October 28, 2003, Paul A. Gargano replied to Ronald Zimmer by email and
requested copies of the invoices and an opportunity to compare the upgrade cost with the
allowances that had already been built into the contract price.  (Tab 5, Email dated
October 28, 2003)

On October 29, 2003, Ronald Zimmer sent copies of Zimmer & Associates
invoices for flooring and moldings to Paul A. Gargano's office in Cambridge.  However,
Ronald Zimmer failed to include the invoices from the actual suppliers of the products,
nor were the invoices that were submitted to Customs included and these documents
would be necessary for a proper accounting.  The Customs invoices are most significant
because given the hefty fine for any inaccuracies reported in those invoices, their
accuracy can be reasonably ensured.

On November 13, 2003, the Gargano's wired the last installment for payment
pursuant to the terms of the contract.  (Tab 1, para. 35) As of this date the full contract
amount set forth in the original schedule of payment had been made.  In an email dated
November 12, 2003 from Paul A. Gargano to Ronald Zimmer, Paul A. Gargano noted
that **final payment was being made in advance** of the time set forth in the original

contract and in anticipation of the job being completed. (Tab 6, email dated November 12, 2003)

On November 19, 2003, Ronald Zimmer sent Paul A. Gargano another email, again demanding the payment of $100,000.00 for the cost of upgrades. (Tab 7, Email dated November 19, 2003)  Paul A. Gargano replied to Ronald Zimmer by email on November 26, 2003, at which time he stated that before payment is made, the cost of upgrades must be compared to the allowances in the contract and itemized before payment is made with verification of invoices. (Tab 8, Email dated November 26, 2003)

On December 1, 2003, Ronald Zimmer replied by email to Paul A. Gargano, demanding payment of $100,000.00 by December 5, 2003.  (Tab 9, Email dated December 1, 2003) The emails sent by Ronald Zimmer on October 10, November 19 and December 1 were all sent from Ronald Zimmer's personal email account.

On December 8, 2003 Celita Zimmer. sent a fax, to Paul A. Gargano at his office in Cambridge, MA on Zimmer & Associates Ltd. letterhead demanding immediate payment of $100,000.00 and further stated that she **hoped that the Gargano's would not give her any trouble**. (emphasis added)(Tab 10, Fax from Zimmer & Associates dated December 8, 2003)  As of this date, and despite repeated requests, neither Celita Zimmer, Ronald Zimmer nor Zimmer & Associates, had provided the Gargano's with the requested invoices from suppliers that related to overage costs, so that they could be compared against the contract allowances.

On December 12, 2003, a second letter was faxed to Paul A. Gargano at his Cambridge office from Celita Zimmer again on Zimmer & Associates letterhead.  (Tab 11, Fax from Zimmer & Associates dated December 12, 2003) This letter again

demanded payment of $100,000.00 and stated that the Zimmer's had sought legal advice in the event that the Gargano's planned to default on any payments. Celita Zimmer also stated that before she allowed any furniture to be delivered into the home (as a container of furniture had now been delivered to the site) she wanted the Gargano's or a representative to sign-off on the completion of the house in addition to the payment of $100,000.00. Celita Zimmer knew that the Gargano's wished to have furniture in the house for their much anticipated arrival on December 27, 2003 and this demand put the Gargano's at the further disadvantage of not being able to inspect the house personally. (Tab 1, para. 43) No prior inspection had ever been demanded by the Zimmer's, nor did the Gargano's ever request an inspection and this demand was obviously designed to extract payment from the Gargano's. Id. Throughout the performance of the contract, the Gargano's relied on the good faith and integrity of the Zimmer's that the work was being completed as represented.

Prior to Celita Zimmer's demands, at no time had the Gargano's stated that they would not pay Zimmer & Associates  In fact, the total contract price had been paid in full one month earlier during the course of construction.  At times the Gargano's had even made advance payment in the amount of double the scheduled payments set forth in the contract, as an accommodation and as motivation for the timely completion.  Id. at para. 30)

The only outstanding issue was that of cost overages as a result of upgrades, which the Gargano's, not unreasonably, wanted an opportunity to review with the Zimmer's.  The Zimmer's were aware that the Gargano's, along with their children and grandchild were scheduled to arrive in Cayman on December 27, 2003, the airfare was

8

paid and the tickets were issued with the advance knowledge of the Zimmer's, and Paul
A. Gargano stated to Ronald Zimmer that he would be happy to settle-up the accounts at
that time upon a review of the expenses. (Id. at para. 36)

Following the December 12, 2003 letter, Ronald Zimmer, via a telephone
conversation with Paul A. Gargano in his Cambridge, Massachusetts office, threatened to
stop all work if the $100,000.00 was not paid immediately. (Id. at para. 44) Through a
conversation with a Mr. Paul Nixon, the Gargano's learned that Ronald Zimmer further
advised the appliance dealer, A.L. Thompson, not to deliver any of the appliances to the
Gargano residence prior to being paid and told the appliance dealer that the Gargano's
did not pay their bills. (Id. at para. 47) This was an utter falsehood and put increased
pressure on the Gargano's to pay the Zimmer's for fear of the home not being ready for
their arrival. The Gargano's wired full payment in advance to A.L. Thompson for the
appliances and installation.

The Gargano's were nervous and upset about the home not being completed given
their previously scheduled travel plans with their family. The threats of a work stoppage
and the demands for immediate payment caused the Gargano's to become further anxious
and it was under this duress with the threats of the work stopping, that on December 15,
2003, the Gargano's authorized the payment of $100,000.00 to Zimmer & Associates (Id.
at para. 48) A payment that was disputed at the time and remains disputed to this day.

The $100,000.00 payment was made with the understanding that the house would
be complete for the Gargano's arrival and that Ronald Zimmer would personally meet
Paul A. Gargano in Cayman on December 27, 2003 to review the accounting and that any
overpayment would be refunded to the Gargano's. Id. Ronald Zimmer assented to this

agreement and as acknowledgement of his assent, signed and returned, via fax to Paul

Gargano's Cambridge office, an email sent by Paul A. Gargano dated December 15,

2003, which set forth the parties understanding regarding the review of the overage costs

and refund of any overpayment by the Gargano's. (Tab 12, Email dated December 15,

2003 with handwritten note of Ronald Zimmer.)

On or about December 17, 2003 Ronald Zimmer and his wife Celita, left Cayman

Island and traveled to Pennsylvania, where the Zimmer's own a home and remained there

through the Christmas and New Year's holiday. (Tab 1 at para. 50) The Zimmer's left

Cayman Island without informing the Gargano's of their departure and without obtaining

an occupancy permit for the Gargano's house or completing the work.[2] (Tab 1 at para.

56)  Confirmation of the Zimmer's presence in Pennsylvania is acknowledged in Celita

Zimmer's affidavit filed with this court wherein she references receiving a Fed-Ex

envelope in Pennsylvania.

Telephone calls placed to Cayman Island on December 22, 2003 by Paul A.

Gargano revealed that the house was not ready for occupancy, including the connection

of electrical service and installation of appliances and that such work would not be

completed by December 27, 2003, nor would Ronald Zimmer be present to review the

costs of overage as he had promised. (Id. at para. 51)  The Zimmer's assert in their

affidavits that the house was completed on December 23, 2003, however, this simply was

not the case.

Given the situation, the Gargano's were experiencing increasing anxiety and

frustration due to the actions of Defendants.  It was now obvious to the Plaintiff that the

defendants had no intention of reviewing the overage costs with the Plaintiff or refunding

any overpayment by the Plaintiff. The $100,000.00 had been taken under false pretenses and in bad faith. The Gargano's were forced to cancel their family trip at a considerable expense and were denied the opportunity of being in their new home, which they had looked upon with great anticipation and for which they had expended considerable sums of money. The house remained uninhabitable for most of January 2004, without proper electrical supply, water supply or installation of appliances. The defendants did not request a certificate of occupancy for the home until January 2004. (Tab 13, Application for Occupancy Permit from Cayman Islands) An occupancy permit for the garage was denied by the building department.

Following the institution of his lawsuit, the Plaintiff made requests through the defendant's counsel in Cayman Island for the sought after documentation for the overage costs Island and still the documentation was not provided. To date, the Zimmer's have not provided the Gargano's with any of the supporting invoices requested to substantiate the overage costs for which they collected $100,000.00 from the Gargano's, an amount the Gargano's dispute and which was paid under duress.

## II.    Argument:

### A. This Court has Personal Jurisdiction Over the Three Defendants:

In determining whether a court has personal jurisdiction over a defendant, a two-part analysis is necessary: First, the court must determine whether the long-arm statute of the forum state confers jurisdiction over the defendant. Secondly, the court must undertake a Due

---

[2] An occupancy permit was not obtained until the end of January 2004.

Process analysis to determine whether conferring jurisdiction over the defendants comports with traditional notions of fair play and substantial justice. In the present case, both prongs of the personal jurisdiction analysis are satisfied as to all three defendants.

### a.    The Massachusetts Long Arm Statute Confers Jurisdiction Over this Case:

It is apparent that the Massachusetts Long Arm Statute M.G.L. c. 223A § 3 does confer jurisdiction over the three defendants. Among the circumstances for which the long arm statute allows for jurisdiction over an out of state defendant are cases: "arising from the persons (a) transacting any business in the Commonwealth;...(c) causing tortuous injury by an act or omission in the Commonwealth..." Id.

The "arising from" clause is to be generously construed in favor of applying jurisdiction by applying the following "but for" causation test: "Did the defendant's contacts with the Commonwealth constitute the first step in a train of events that resulted in the personal injury?" Tatro v. Manor Care, Inc., 416 Mass. 763, 625 N.E.2d 549, 553 (1994) The "but for" test is satisfied here where it is clear that the Defendants contacts with Massachusetts led to the injury suffered by the Plaintiff, as the Plaintiff's claims for fraud, misrepresentation, breach of contract and violation of M.G.L. c. 93A derive directly from the defendant's correspondence including emails and faxes that were sent into Massachusetts.

12

The "transacting any business" clause has also been construed broadly by Massachusetts Courts. Bennett v. Jack Dennis Whitewater Trips, 925 F.Supp. 889 (D.Mass 1996) It is not necessary for a defendant to be physically present in the state in order to meet the definition of transacting business in the Commonwealth. Energy Capital and Services LP, II v. Hill Refrigeration, Inc., 989 F.Supp. 353 (D.Mass 1997)

Personal Jurisdiction over the Zimmer's is proper in Massachusetts, as all of the correspondence involving the demands and false statements made by the Zimmer's that give rise to Plaintiff's claims were sent by fax or email to Paul A. Gargano's office in Cambridge, Massachusetts. The federal district court and the Supreme Judicial Court of Massachusetts have held that such contacts constitute the "transaction of business" in Massachusetts and will satisfy the requirements for jurisdiction over a foreign individual or entity by a court in Massachusetts pursuant to the Massachusetts Long Arm Statute. See, Hahn v. Vermont Law School, 698 F.2d 48, 50 (1 Cir. 1983) )(First Circuit held that that the actions of defendant in mailing to Plaintiff in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long Arm Statute) See also, Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193 (1st Cir. 1980)(First Circuit held that the Defendant's mailing two letters to Plaintiff in Massachusetts demanding that it cease and desist

infringing on its patent were sufficient contacts for Massachusetts to take jurisdiction over the foreign Defendant.)

In the present case, although the defendants actions emanated from outside Massachusetts, they were transacting business within the Commonwealth in both an individual capacity and as agents of Zimmer & Associates  For over a year Ronald Zimmer continued to solicit and pursue the business of the Gargano's while the Gargano's were in Massachusetts, going as far as to retain a Florida architect to draft sample plans for the Gargano's review.  Zimmer & Associates, through its principal, Celita Zimmer, then contracted with Paul A. Gargano for the construction of a home.  Despite any assertions of the Defendants to the contrary, this contract was sent to Paul Gargano in Massachusetts and executed  in Massachusetts by the Plaintiff.  The defendants continued to transact business in Massachusetts by way of the numerous faxes and email correspondence directed at the Defendants in Massachusetts, which included requests for payment and procurement of materials that were sent to the Gargano's in Massachusetts.

In the case of Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (2003), the plaintiff pointed to four telephone calls, five emails and three faxes sent by the Defendant to the Plaintiff in Massachusetts over a three month period as evidence of sufficient contacts to establish personal jurisdiction within Massachusetts over the Defendant. The court noted that even just a few acts on the defendant's part can

14

suffice to satisfy the long arm statute and that a Defendant need not be physically present in a state to transact business in the state. Id.

The facts in Workgroup, are strikingly similar to the facts in this case. Beginning in October of 2003 and continuing until December 2003, there are a continuous stream of email and fax correspondence by Ronald Zimmer from his personal email account and from Celita Zimmer on Zimmer & Assoc. Ltd. letterhead directed to the Gargano's and demanding payment of $100,000.00 without proper documentation or accounting and making threats of a work stoppage unless payment was made.

These numerous unfair demands and misrepresentations by the Defendants, which were sent into Massachusetts and received and relied upon by the Plaintiffs in Massachusetts, make up the heart of the Plaintiffs Complaint and caused the Plaintiffs to suffer tortious injury in the Commonwealth. Murphy v. Erwin-Casey, Inc. 460 F.2d 661 (1st Cir. 1972)(For purpose of Massachusetts Long Arm Statute where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of the resident of that state, he has for jurisdictional purposes, acted within that state.) The tortious injury suffered in the Commonwealth was the payment of money authorized by the Gargano's in Massachusetts that was not otherwise due the Defendants or specified in the contract but was paid as a result of the unfair and deceptive acts of the Defendants, which amount to fraud and

misrepresentation. Additional damages suffered in Massachusetts include the resulting emotional distress and anxiety suffered by the Gargano's due to the pressure, coercion and duress being applied to them by the Zimmer's.

In the case of, <u>The Carlson Corporation v. University of Vermont</u>, 380 Mass. 102 (1980), The Carlson Corp. brought suit in Massachusetts against the University of Vermont. The University moved to dismiss the case based on a lack of personal jurisdiction. The Supreme Judicial Court of Massachusetts held that where the contract was made in Massachusetts and the contract involved a commercial transaction over a prolonged period of time with a Massachusetts corporation, pursuant to a written contract signed in the state, that Massachusetts had an interest not only in providing a forum for its residents, but also in enforcing business transactions consummated within its boundaries. <u>Id</u>. at 108. In the present case the contract was consummated by the Gargano's in Massachusetts. Once consummated, the contract was performed over a period of almost two years, during which time the defendants were sending frequent correspondence into Massachusetts, including the email and fax correspondence regarding their demands for $100,000.00 in upgrade costs, which is central to the Gargano's complaint.

In summation, it is quite clear that the Massachusetts Long Arm Statute allows for jurisdiction over the Defendants where the Defendants solicited business from Massachusetts residents, contracted with

Massachusetts residents, worked in conjunction with Massachusetts

residents for the construction of a home and directed a series of

communications which were deceptive and false into Massachusetts where

they were relied upon to the detriment of the Plaintiff in Massachusetts.

a. **Due Process is Satisfied With Respect to All Three Defendants:**

Federal Courts have set forth a two-pronged analysis for determining

whether Due Process is satisfied with respect to the personal jurisdiction over

the Defendants.  The first issue the court must examine is whether the

Defendants have sufficient minimum contacts with the forum state.  The

second issue is would the exercise of jurisdiction over the defendants be fair

under the "gestalt factors."  Jet Wine and Spirit, Inc., v. Bacardi & Co. Ltd.,

298 F.3d 1 (1St Cir.Ct.App. 2002)

(i) **The Defendants Have Sufficient Minimum Contacts with Massachusetts:**

This is a case in which there exists specific jurisdiction over the

defendants for the claims alleged in Plaintiff's complaint because said claims

arise directly out of the actions of the Defendants that were targeted at the

Plaintiffs in Massachusetts.  In judging minimum contacts, a court properly

focuses on "the relationship among the defendant, the forum and the

litigation."  Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579 (1977)

The state does not acquire…jurisdiction by being the center of gravity of the

controversy, or the most convenient location for litigation. The issue is personal jurisdiction not choice of law. Id., citing, Hanson v. Denckla, 357 U.S. 235, 254, 78 S.Ct. 1228, 1240 (1958)

Minimum contacts exist for a case of specific jurisdiction where: (1) the claim underlying the litigation arises out of or relates to the defendant's forum state activities and (2) defendant's in state conduct represents purposeful availment of the privilege of conducting activities in the forum state, thereby invoking benefits and protections of the state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984)(An individual injured in California need not go to Florida to seek redress from persons who though remaining in Florida, knowingly cause the injury in California.)

In the present case the claims underlying the litigation arise directly from the Defendants forum state activities. Similar to the defendant in Calder, who published a libelous article aimed at a person in California knowing the brunt of the injury would be felt in California; the defendants in the present case sent numerous deceptive and threatening correspondence into Massachusetts and lied about their intentions, knowing that the Plaintiff would rely on these representations in Massachusetts and that this reliance would manifest itself in Massachusetts. The actions and statements made by the Defendants were directed at the Plaintiff in Massachusetts and caused the Plaintiff to take actions in Massachusetts that were to his financial detriment when he authorized payment of funds that were not owed and were being disputed.

Most if not all of the correspondence from the Defendants between October and December of 2003 were sent directly to the Plaintiff's office in Cambridge, MA, either by telephone, facsimile or the office email account. Therefore, all representations made by the Defendants were received and relied upon by the Plaintiff in Massachusetts, including the representation made by Ronald Zimmer that he would meet with the Gargano's on December 27, 2003 and review the overage costs in their entirety; a representation that further induced the Gargano's to issue an authorization in Massachusetts for the release of funds in the amount of $100,000.00 to Zimmer & Associates on or about December 2003.

The Defendants point to their lack of physical contact with Massachusetts in support of their motion to dismiss. However, the Supreme Court has consistently rejected the notion that absence of physical contacts with a forum state can defeat personal jurisdiction, so long as the commercial actor's efforts are directed toward residents of another state. See, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985); See also, Calder v. Jones. This is not a case of fortuitous or coincidental conduct in Massachusetts on the part of the Defendants. The Defendants, particularly Ronald Zimmer, actively solicited business from the Gargano's who he knew to be Massachusetts residents. Ronald Zimmer was not shy in soliciting this business and the Zimmer's gladly accepted the economic benefits of the contract. As is Calder, the defendants in the present case should have reasonably anticipated being haled into court in Massachusetts to answer for

19

their false statements and unfair and deceptive practices when they lied to the Plaintiff and coerced a disputed payment from him through their communications in Massachusetts.

The defendants, having chosen to transact business in Massachusetts with Massachsuetts residents, should not be allowed to reap the benefits of their misdeeds on the one hand and avoid the jurisdiction of the Commonwealth on the other where their actions in Massachusetts are the basis for the claim against them.

**(ii)    Jurisdiction over the Defendants is Reasonable Based on the "Gestalt Factors".**

In determining whether jurisdiction over the Defendants is reasonable so as to satisfy Due Process the court will look at a series of factors which the First Circuit has named the "Gestalt Factors."  Jet Wine and Spirit, Inc., v. Bacardi & Co. Ltd., 298 F.3d 1 (1StCir.Ct.App. 2002) These factors include, (1) the defendant's burden in appearing; (2) the forum states interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial systems interest in obtaining the most effective resolution of the controversy and (5) the common interest of all sovereigns in promoting substantive social policies.  Id. at 11.

(1)        In the present case the burden on the Defendant's in appearing is not so great as the Defendants would have the Court believe.  Although Ronald Zimmer states in his affidavit that he and his wife have not been to

Massachusetts in over twenty years, he fails to mention that they routinely travel to the United States. As Ronald Zimmer points out, he is a United States citizen. It is known that the Zimmer's frequently travel in the United States and specifically to Florida and the northeast, where they own a home in Pennsylvania. The Zimmer's cannot demonstrate that it would be such a burden on them to travel to Massachusetts that jurisdiction here would offend Due Process. By their actions in this case, the Zimmer's have demonstrated that they possess the capacity and technology to easily contact persons in Massachusetts using multiple modes of communication. Harris Rutsky & Co. Insurance Services, Inc. v. Bell and Clements Limited, 328 F.3d 1122 (9th Cir.Ct. App. 2003); citing, Sinatra v. National Enquirer, 854 F.2d 1191, 1199 (9th Cir. 1988)( In discussing the burden of defending in a foreign jurisdiction the Court noting that modern advances in communications and transportation have significantly reduced the burden of litigating in another country.) The minimal burden imposed on them by the few times they may be called to actually appear in Massachusetts cannot be dispositive where they are known to travel into the United States frequently and without impediment.

(2)      Massachusetts has a strong interest in adjudicating this dispute. The Complaint alleges, among other things, violation of M.G.L. c. 93A. This is a state statute designed specifically to address the type of harm alleged by the Plaintiffs. Massachusetts has a strong interest in the protecting its citizens from the unfair and deceptive actions of businesses and persons that emanate from a foreign jurisdiction. The statute is of little benefit to residents if

21

Massachusetts citizens cannot prosecute 93A claims in their own state, particularly when the actions of the defendant constituting the claim impacted the Plaintiffs in Massachusetts and induced them to act to their detriment.

(3)    Massachusetts interest in adjudicating the dispute goes hand in hand with the Plaintiff's interest in having a convenient forum to litigate their claim. The Defendant argues that it is less burdensome on the Plaintiffs to travel to Cayman Island but this ignores the fact that Defendants actions caused harm to the Plaintiffs in Massachusetts and the conduct was directed into Massachusetts.

Further the judicial systems interest in obtaining the most effective resolution of the controversy favors the case being heard in Massachusetts. This is not so much a case of breach of contract, although there are breach of contract counts, as it is a case of misrepresentation and fraud. The Plaintiffs are not alleging that the construction of the house was defective. The Plaintiff's allegations are of fraud and deception, which resulted in injury to the Plaintiff in Massachusetts. This court will be most familiar with Massachusetts law on fraud and misrepresentation and is best equipped to handle the 93A claim.

To the extent that this case touches on the final factor, the common interest of all sovereigns in promoting substantive social policies, this factor also weighs in favor of jurisdiction in Massachusetts. The Defendants individually and in the form of Zimmer & Associates chose to do business in Massachusetts. It would frustrate the laws of Massachusetts and the

22

continuing relationship between US and Cayman governments if the defendants were to be shielded from answering for their conduct in Massachusetts that caused harm to Massachusetts residents. It is not in the interest of either sovereign to allow its citizens to act in a manner that is contrary deceptive and fraudulent and then allow the individuals to take refuge behind the flag of their home country in an attempt to avoid prosecution or litigation in the forum where their actions were felt. Since the actions complained of where directed towards Massachusetts at Massachusetts residents the alleged wrongdoers should be called to answer for their wrongs in Massachusetts.

**CONCLUSION:**

Personal Jurisdiction exists as to all three defendants where (1) The defendants have transacted business in Massachusetts and caused tortious injury in Massachusetts and (2) there is specific jurisdiction over the Defendants based on the defendants contacts with Massachusetts that give rise to the claims against them and the fact that the "gestalt" factors weigh in favor of personal jurisdiction over the Defendants making jurisdiction over the defendants reasonable.

Respectfully Submitted
By the Plaintiff,

/s/ Sean Beagan

Paul A. Gargano
BBO# 185560
Timothy Scannell

23

BBO# 655453
Sean M. Beagan
BBO# 644929
Gargano & Associates
4 Canal Park
Cambridge, MA 02141
617-621-1100