UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL A. GARGANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-12605-NG |
| ) | |
| RONALD ZIMMER, ZELITA ZIMMER, ) | |
| and ZIMMER & ASSOCIATES, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Ronald Zimmer ("Dr. Zimmer"), Celita Zimmer ("Ms. Zimmer"), and Zimmer & Associates Ltd. ("Zimmer & Associates") (collectively, the "Zimmers") submit this reply to "Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction" (the "Opposition") and in further support of their motion to dismiss the action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

The plaintiff attempts to turn the law of *in personam* jurisdiction on its head. What the plaintiff conveniently ignores is that he is a longstanding resident of the Cayman Islands. In fact, he has permanent resident status there. He has owned property in the Cayman Islands for decades and visits there every year, for long stretches of time. The plaintiff initiated the business relationship at issue in the Cayman Islands. This was not an international business transaction at all, and the Zimmers did not transact any business in Massachusetts. This transaction at issue was negotiated in the Cayman Islands and concerns the construction of a luxury home in Grand Cayman by a Caymanian contractor for a Caymanian resident. Such facts do not give rise to jurisdiction over any of the defendants.

## Facts

The plaintiff does not dispute most of the facts set forth in the Zimmers' moving papers. Instead, the plaintiff sets forth a "factual background" containing allegations that largely have nothing to do with personal jurisdiction. The plaintiff's facts are either completely irrelevant or concern the *merits* of his claim. In any event, as described in the Second Affidavit of Ronald Zimmer ("Second Zimmer Aff.") and the Affidavit of Diana Henderson ("Henderson Aff."), both of which are submitted herewith, the plaintiff's conclusory and unsupported "facts" are largely wrong.[1]

The plaintiff has made only three allegations that concern jurisdiction. See Opposition, p. 14. First, the plaintiff argues "Ronald Zimmer was aggressive in his solicitation and in his bidding and was ultimately able to persuade the Gargano's [sic] that building a home was feasible." Opposition, p. 2.[2] The plaintiff's conclusory allegation is supported by nothing more than his say-so. It is flatly contradicted by the Zimmers and a third party, Ms. Henderson. The Second Zimmer Affidavit, in great detail, describes how the plaintiff solicited the Zimmers and how their business relationship evolved – *in the Cayman Islands*, where the plaintiff owned a

---

[1] For the sake of brevity and because many of the plaintiff's allegations are not relevant to the jurisdictional analysis, the affidavits only address a sub-set of all the allegations. To the extent that certain allegations are not addressed, it is not because the Zimmers agree with the plaintiff's characterization. They do not.

[2] This allegation is not even believable. The plaintiff owns property worth millions of dollars in Cambridge, Hyannisport, Nantucket, and Killington, Vermont. His house in Hyannisport was assessed at nearly $2.4 million in 1997. See Gargano v. Board of Assessors of Barnstable, 61 Mass. App. Ct. 1109, 2004 WL 1254049 at 1 (June 8, 2004).

> We refer the parties to the board's decision for a thorough description of this nearly nine-acre waterfront property located in Hyannisport and improved with an 8,200 square foot, ten room house with an additional 1,500 square foot wing that contains an indoor swimming pool. The property is further improved with a six-car garage with an upper loft. The property's 8.93 acres includes 2.66 acres of upland, 3.96 acres of wetland, and 2.31 acres of tidal including 588 feet of sandy beach frontage on Centerville Harbor and approximately 1,500 feet of marshy water frontage on Hall's Creek.

Id. That the plaintiff needed to be "persuaded" that it was "feasible" to construct a new home in the Cayman Islands is ludicrous.

home, has been a property owner there for twenty years, and where he has permanent resident status. Second Zimmer Aff., ¶¶ 5-13; Henderson Aff., ¶ 3. This was a purely Caymanian business transaction.

Second, the plaintiff alleges that the Zimmers mailed him the contract in Massachusetts, and that he signed it there. While it is true that the plaintiff (and not the Zimmers) signed the contract in Massachusetts, that was not the intention of the Zimmers. As described in the Second Zimmer Affidavit, Dr. Zimmer handed the contract to the plaintiff at the plaintiff's house in Grand Cayman. The contract had been negotiated and drafted in the Cayman Islands, and had already been signed by Celita Zimmer, again in the Cayman Islands. Unbeknownst to Dr. Zimmer, the plaintiff took the contract back to Massachusetts before signing it and leaving a copy with the Zimmers, as Dr. Zimmer understood he would do. Second Zimmer Aff., ¶¶ 12-13. In any event, the fact that the plaintiff signed the contract in Massachusetts is not significant. The plaintiff does not dispute that the negotiations and discussions leading up to the contract were in Grand Cayman, or that the subject matter of the contract was the construction of his new home in Grand Cayman. The fact that the *plaintiff* signed a contract in Massachusetts does not confer jurisdiction over the *Zimmers* in this Commonwealth.

Third, the plaintiff makes much ado about the correspondence between the Zimmers and the plaintiff during the construction of his new house, while the plaintiff was located in Massachusetts. The plaintiff characterizes this correspondence as "conduct [] directed in Massachusetts" and proof that the Zimmers "chose to do business in Massachusetts." See, e.g., Opposition, 22. This allegation is absurd. The Zimmers contracted with the plaintiff in Grand Cayman to build him a house in Grand Cayman. There was minimal correspondence during the construction, and it was incidental to the construction of the house. The fact that it was directed

to Massachusetts does not establish personal jurisdiction over the Zimmers. The correspondence does not amount to the "transaction of business" and certainly is not enough to survive Constitutional muster.

Even more preposterous than the plaintiff's jurisdictional arguments is his allegation that the correspondence "caused the Plaintiffs [sic] to suffer tortious injury in the Commonwealth." Opposition, p. 15. The plaintiff alleges:

> The tortious injury in the Commonwealth was the payment of money authorized by the Gargano's [sic] in Massachusetts that was not otherwise due the Defendants or specified in the contract but was paid as a result of the unfair and deceptive acts of the Defendants, which amount to fraud and misrepresentation. Additional damages suffered in Massachusetts include the resulting emotional duress and anxiety suffered by the Gargano's due to the pressure, coercion and duress being applied to them by the Zimmers.

Id., pp. 15-16. The plaintiff is far from the innocent rube he plays. Indeed, the instant litigation is not the first time Mr. Gargano has been a plaintiff. Attached hereto as Exhibit A are several reported cases in which the plaintiff has been involved.[3] One case in particular is particularly notable: Gargano & Associates, P.C., Paul A. Gargano and Sheila K. Gargano v. John Swider & Associates, 55 Mass. App. Ct. 256 (2002). In that case, Mr. Gargano sued the architect for his Hyannisport house and his law office:

> Unhappy with the work performed on their respective projects, both the Garganos and G&A refused to make final payment to the contractor, asserting that JSA had breached its contractual obligations by failing to perform certain work and by completing other tasks in an unworkmanlike manner. In response, JSA filed demands for arbitration against both the Garganos and G&A.

Id. at 257-58. The arbitrator awarded the architect $117,279. Id. at 258.

---

[3] The defendants have also learned that the plaintiff has been involved in many, many state court cases, as both a plaintiff and defendant. The plaintiff's history of litigation and his status as an experienced litigation attorney make his claim that he was pressured and coerced by the defendants not credible at all.

4

At bottom, this litigation is about nothing more than the plaintiff trying to gain leverage so that the Zimmers will forgive the approximately US$40,000 he owes them. Second Zimmer Aff., ¶ 17. (Not surprisingly, the Zimmers are not the only party to whom the plaintiff refuses to pay. See Henderson Aff., ¶¶ 5-6.) The plaintiff bears no expense in this litigation, as he utilizes the resources of his Cambridge law firm to file a frivolous complaint and motions. The Zimmers, meanwhile, have been forced to incur time and expense defending litigation in a foreign country.

## Argument

Even if this Court assumed all the allegations made by the plaintiff were true (and they clearly are not), there still would be no personal jurisdiction over the Zimmers. None of the cases cited by the plaintiff remotely suggests that jurisdiction would exist under these circumstances. Because the plaintiff has not satisfied his burden, Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978), this action must be dismissed.

### I. The Plaintiff Has Not Satisfied His Burden In Demonstrating Personal Jurisdiction Under the Massachusetts Long Arm Statute.

#### A. Section 3(a)

The plaintiff argues that the Zimmers "transacted business within the Commonwealth" under G.L. c. 223A, § 3(a). As explained above, the plaintiff's factual allegations do not hold water, and the plaintiff's vague, conclusory allegations do not satisfy his burden of proof.

As a legal matter, assuming *arguendo* that the plaintiff's allegations were true, it hardly can be said that the Zimmers "attempted to participate in the Commonwealth's economic life." See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1087 (1st Cir. 1992). The plaintiff fails to appreciate that the Zimmers were not simply contracting with a "Massachusetts resident" – they were contracting with a *Caymanian* resident.

5

The plaintiff has owned property in the Cayman Islands for over twenty years. He has permanent resident status there. The fact that he also resides in Massachusetts, and received limited correspondence there, is not a basis for jurisdiction in this Commonwealth.[4]

### B.    Section 3(c)

To establish jurisdiction under section 3(c), the plaintiff attempts to characterize the action as one in tort, accomplished through "numerous unfair demands and misrepresentations" sent from the Cayman Islands to the plaintiff here in Massachusetts. See, e.g., Opposition, pp. 15-17. As explained above, the correspondence to which the plaintiff cites did not cause "tortious injury" in Massachusetts. The plaintiff's specious claim is and always has been that his house was not habitable in time for his Christmas vacation (which, in any event, is false, see Second Zimmer Aff., ¶ 18; Henderson Aff., ¶ 9) and that he has paid too much for it. That is a contract claim. That there was correspondence between the parties about payment does not arise to "tortious activity" in Massachusetts such that section 3(c) applies. See Better Boating Assoc., Inc. v. BMG Chart Prods., Inc., 1998 WL 408976, at *5 (Mass. Super. Ct. July 10, 1998) ("tortious conduct [must] occur in Massachusetts, rather than simply affect a Massachusetts resident").

### II.    The Plaintiff Has Not Satisfied His Burden In Demonstrating That Personal Jurisdiction Would Comport With Due Process.

Even if the plaintiff could satisfy the Massachusetts long arm statute, he cannot possibly show that the exercise of personal jurisdiction here would comport with "traditional notions of

---

[4] The cases cited in the defendants' moving papers demonstrate that much more is needed to satisfy the transaction of business requirement. For example, in Tatro v. Manor Care, Inc., 416 Mass. 763 (1994), cited by the plaintiff at page 12 of his Opposition, the SJC found jurisdiction under section 3(a) because: "It is obvious that the defendant, which solicited and obtained meeting and convention business from at least ten Massachusetts businesses, and maintained telephone and mail contact with them, transacted business in the Commonwealth during the relevant period." Id. at 768. The SJC found that jurisdiction comported with the due process clause because: "In view of the hotel's quite extensive solicitation of business in Massachusetts (from which the plaintiff's claim arose), it is reasonable to conclude that the hotel has "invoked the benefits and protections" of Massachusetts laws. Id. at 773.

fair play and substantial justice." Brookfield Mach., Inc. v. Calbrit Design, 929 F. Supp. 491 (D. Mass. 1996) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The plaintiff's argument is built on a fallacy, that the Zimmers "chose[] to transact business in Massachusetts with Massachusetts residents." Opposition, p. 20. As explained above, the plaintiff – himself a Caymanian resident – chose to do with business with the Zimmers, in Grand Cayman. This was a business relationship between two Caymanian residents.

The plaintiff argues that the Zimmers "should have reasonably anticipated being haled into court in Massachusetts to answer for their false statements and unfair and deceptive business practices when they lied to the Plaintiff and coerced a disputed payment from him though their communications in Massachusetts." Opposition, p. 19. Neither case cited by the plaintiff supports this outlandish argument. Calder v. Jones, 465 U.S. 783 (1984), is a libel case involving a National Enquirer article causing harm to an actress in California. Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1982), involved a franchisor-franchisee relationship, where the defendant "entered into a carefully structured 20-year relationship that envisioned continuing and wide ranging contacts with Burger King in [the forum state]." Id. at 480. Accordingly, the Supreme Court found that jurisdiction was not premised upon the defendant's "random," "fortuitous" or "attenuated" contacts with the forum state. Id.[5]

The plaintiff's analysis of reasonableness – utilizing the so-called *gestalt* factors – is similarly misguided. The Zimmers have not been to Massachusetts in decades. The Zimmers

---

[5] The same cannot be said here. It simply defies common sense to argue that the Zimmers should have anticipated being haled into court in Massachusetts. See, e.g., Hahn v. Vermont Law School, 698 F.2d 48, 51-52 (1st Cir. 1983) ("It is a close question whether VLS, by sending application information and an acceptance letter to Hahn in Massachusetts, has in practical terms invoked the benefits and protections of that state's laws or "should reasonably anticipate being haled into court [there]," VLS activities with respect to Hahn, however, were not simply isolated occurrences; instead, they were part of VLS' efforts to serve the market for legal education in Massachusetts.").

have four young children and Dr. Zimmer is the full-time pastor of a church. Second Zimmer Aff., ¶¶ 3-4. It would be more than a "minimal burden," Opposition, p. 21, for them to defend this harassing litigation here. See Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC, 273 F. Supp. 2d 172, 179 (D. Mass. 2003) ("[A]n important purpose of this gestalt factor ... is the *need to protect remote defendants from **harassing litigation**.*") (emphasis added). In contrast, the plaintiff has been to the Cayman Islands this year, just as he has for the past twenty years. The plaintiff cannot seriously argue that, on balance, the Cayman Islands is not the most convenient forum for all parties.

Massachusetts has no interest in this dispute. The plaintiff makes the unsupported and non-sensical argument that because the Complaint includes a Chapter 93A count, then there should be jurisdiction, because otherwise the "[t]he statute is of little benefit to residents if Massachusetts citizens cannot prosecute 93A claims in their own state...." Opposition, p. 22. Just because the plaintiff has *asserted* a Chapter 93A claim does not mean that Massachusetts has an interest in adjudicating this dispute.[6] Massachusetts has no interest in a dispute arising out of the construction of a luxury home in a foreign country, where all parties are Caymanian residents.

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant. In the present case, however, the interests of the plaintiff and the forum in California's assertion of jurisdiction over Asahi are slight.

Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 114 (1987). Unlike Asahi, the interests here are not even slight. Accordingly, this Court should find

---

[6] It is doubtful that Massachusetts law would apply in any event.

that the plaintiff has not established that this Court may exercise personal jurisdiction over the defendants.

## Conclusion

For the foregoing reasons, and the reasons set forth in the Zimmers' moving papers and affidavits, the Zimmers respectfully request that this Court dismiss the Complaint with prejudice.

Respectfully submitted,

RONALD ZIMMER, CELITA ZIMMER, and ZIMMER & ASSOCIATES

By their attorneys,

*/s/ SMcC*

Thomas F. Maffei (BBO 313220)
Scott McConchie (BBO 634127)
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110-2214
(617) 542-9900

Dated: July 16, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand/facsimile on
7/16/04   SMcC