UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL A. GARGANO,<br><br>    Plaintiff,<br><br>v.<br><br>RONALD ZIMMER, ZELITA ZIMMER,<br>and ZIMMER & ASSOCIATES,<br><br>    Defendants. | Civil Action No. 03-12605-NG |

### AFFIDAVIT OF DIANA HENDERSON

Diana Henderson, on oath, deposes and says as follows:

1. I am a United States citizen and a Caymanian by grant of status. I submit this affidavit in connection with the Defendants' Motion to Dismiss.

2. I have lived in the Cayman Islands for approximately 24 years. I am an interior decorator and landscaper. In early 2003, I was approached by Mr. and Mrs. Gargano to help them with the landscaping and furnishings of their new home, which was under construction at that time.

3. I have known Mr. Gargano for approximately 18-20 years, from the time when he purchased his original house at Cayman Kai. I have known him to spend considerable amounts of time in Grand Cayman, especially during the winter months. It is my understanding that he has permanent resident status in the Cayman Islands.

4. Over the years our families have established a relationship and I have spent time visiting the Garganos in their homes in Massachusetts, New Hampshire and the Cayman Islands. His daughter was a bridesmaid at my daughter's wedding.

5.  As with the Zimmers, Mr. Gargano owes me a large amount of money for work I did for him (i.e., supplying furnishings, landscaping and installing a marble driveway).

6.  Mr. Gargano owes me approximately US$32,000. I agreed to work on a "cost plus" basis. The amount of money owed to me represents approximately US$27,000 in fees for services rendered (i.e., my entire compensation for all the work I did) and approximately US$5,000 for outstanding invoices paid on his behalf (out of my account) for materials and services rendered at his home. Incredibly, Mr. Gargano now alleges that I *owe him* money.

7.  I find the allegation that the Zimmers convinced Mr. Gargano to build a new house incredible. Mr. Gargano is an intelligent man and not one who is easily persuaded to do anything he did not wish to do.

8.  I remember a conversation with Mr. Gargano a couple of years ago during which he said, "When I first bought this house, it was the nicest one in Cayman Kai, but since they [referring to the neighbors] built next door, I feel like I am living in the G**damn slums." Mr. Gargano was extremely anxious to tear down his house and rebuild. In fact, he approached my brother, who is also a builder in the Cayman Islands, about building his new home. My brother declined. No one had to convince Mr. Gargano to build his new house. It was his own idea.

9.  I also understand that Mr. Gargano alleges his house was "not habitable" at the end of December 2003. I do not believe this to be the case. I was working at Mr. Gargano's home on or around December 23, 2003, and remember speaking to Mr. Gargano by telephone. I encouraged him to bring his family to his beautiful new house. Though the house was on a temporary electrical connection, there was adequate electricity. There was certainly no problem with the water since I personally used thousands of gallons to water the new landscaping. There was no reason why Mr. Gargano and his family could not have come to their new house. I told

07/16/2004 FRI 15:15 FAX                                                                 ☒003/003

Mr. Gargano that everything would be fine, but Mr. Gargano ordered me to stop my preparations and told me that he was canceling the trip.

10. I also understand that Mr. Gargano alleges that "Ron Zimmer has never returned to the house since on or about December 2003." This allegation is false. I was at the house with Ron Zimmer on January 5th or 6th. In fact, I spoke to Mr. Gargano's secretary that day and told her that Ron Zimmer was there at the house. Zimmer & Associates, Ltd. had at least one person present almost continually through the holidays in anticipation of the Gargano's arrival. Any allegation that the Zimmers abandoned the project is absurd.

11. The Garganos arrived in Cayman Kai in January. I greeted them and they toured their new home for the first time since March of 2003. They were amazed at its beauty and were effusive in their praise of the house. I have never heard them complain about the quality or any other aspect of the home.

Signed under the pains and penalties of perjury this 16 day of July, 2004.

*Diana Henderson*
Diana Henderson

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand/facsimile on 7/16/04