UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS, ss.                  C.A. No.  03-cv-12605

| | |
|---|---|
| PAUL A. GARGANO<br>Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| | .) |
| RONALD ZIMMER, CELITA ZIMMER<br>and ZIMMER & ASSOCIATES<br>Defendants | )<br>)<br>)<br>) |

## PLAINTIFF'S FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**NOW COMES** the Plaintiff, Paul Gargano, who with leave of this Honorable

Court hereby submits this further opposition to the Defendants' motion to dismiss the

above referenced matter for lack of personal jurisdiction.

This is a case of consumer fraud. The operative facts of this case relate to a series

of misrepresentations and correspondences containing fraudulent misstatements of fact,

which were knowingly directed by the Defendant to the Plaintiff in the Commonwealth

of Massachusetts, with the intent and inducement that the Plaintiff would rely upon them

to his detriment.  All of the injuries suffered by the Plaintiff in this matter, (the

Defendants, notably, have not disputed that an injury to the Plaintiff has occurred) were

suffered in Massachusetts.  The Plaintiff is not alleging that the Defendant built him a

defective house.  Rather, the Defendant used the existence and opportunity of a

contractual relationship in order to perpetrate a fraud on the Plaintiff in Massachusetts.

## Facts

As has been stated previously, this is not a case of breach of contract, the working relationship between the Plaintiff and Defendants was harmonious until the fall of 2003. That being said, since the present issue before the court is one of personal jurisdiction, which necessarily focuses on Defendants in state contacts, the Plaintiff must respond to the false assertions of the Defendants as to the solicitation and formation of the contract.

First and foremost this is not a case involving persons who are solely Caymanian residents. The plaintiff, Paul Gargano is a life-long resident of Massachusetts. He resides in Massachusetts on a full-time basis and is a practicing attorney. He vacations in Cayman Island when his work schedule allows. (Second Affidavit of Paul Gargano, para. 21). As for the Defendants, Ronald Zimmer is a U.S. citizen. Only Celita Zimmer is a full Caymanian citizen.

Most of Ronald Zimmer's Second Affidavit is a work of fiction. The truth is that following a chance encounter in a Miami airport and beginning on or about March of 2001, following a social visit with Mr. Gargano in Cayman Islands, Ronald Zimmer proceeded to systematically and purposefully solicit the Plaintiff in Massachusetts in order that the Defendants could cultivate a business relationship with the Plaintiff. (See, Second Affidavit of Paul A. Gargano, para. 10)

The Defendants attempt to assert that all of the negotiations between the parties were made on the "seaside porch of the Gargano's existing home in Grand Cayman" (Second Affidavit of Ronald Zimmer, para. 10) This statement is patently false and contradicted by the multiple phone calls and faxes from Mr. Zimmer to Paul Gargano in Massachusetts. (Second Affidavit of Paul Gargano, para. 10) Further, correspondence

addressed to the Plaintiff from Mr. Zimmer dated March 26, 2002 clearly indicates that discussions had been ongoing for a year. In said correspondence, Mr. Zimmer states that "As you know, we have been working together on this project for the past year." (Second Affidavit of Paul Gargano, para. 11) The solicitations included Mr. Zimmer procuring an architect from Florida, William Tucker, to create plans for the Garganos to review. (Second Affidavit of Paul Gargano, para. 12)

It was these continuous solicitations and the fostering of the trust in the relationship between the Plaintiff and Mr. Zimmer, which persuaded the Plaintiff to agree to do business with the Defendants. Of particular importance to the Plaintiff was the Defendants' assurance that the house could be built at a cost that was within the Plaintiff's budget due to the stagnant state of construction that existed in the Cayman Islands at that time. (Second Affidavit of Paul Gargano, para. 12)

Subsequently, the Defendants drafted a written agreement and mailed it from their business office in Florida to the Plaintiff in Massachusetts. (See, Second Affidavit of Paul Gargano, para. 13) Celita Zimmer affixed her signature to the agreement on April 17, 2002, four days after Mr. Gargano and his wife had left the Island to return to their home in Massachusetts. Id. Any allegations that the Plaintiff received this agreement in the Cayman Islands are false and directly contradicted by the Plaintiff's passport. Id. Mr. Gargano executed the document in Massachusetts. This fact has significant choice of law implications for this case because the place where the contract was ultimately executed and became effective is given significant weight in determining which states law will govern the contract.

The Defendant is also incorrect when he states in his affidavit that he had nothing to do with the procuring or selection of materials in Massachusetts. (Second Affidavit of Ronald Zimmer, para. 10) The Defendants and their agents corresponded with suppliers and manufacturers in Massachusetts and with the Plaintiff in order to facilitate the construction. (Second Affidavit of Paul A. Gargano, para. 18)

**Defendants Fraud:**

Beginning in October 2003 a review of the Defendant's correspondence sent to the Plaintiff in Massachusetts evidences a scheme to defraud the Plaintiff. This was the inception of the Defendants' design to perfect a tort for deceit and misrepresentation. These correspondence were addressed in the Plaintiff's Opposition to Defendant's Motion to Dismiss but are worth readdressing because they are contacts the Defendants had with Massachusetts that relate directly to Plaintiff's claims of consumer fraud and thus are central to the issue of personal jurisdiction.

The correspondence and phone calls, which begin on October 10, 2003 and culminates with the exchange between Ronald Zimmer and the Plaintiff on December 15, 2003, evidence a two month effort by the Defendants to force the Plaintiff to pay an additional $100,000.00 against his will and through the application of duress and coercion on the Plaintiff, which included threatening a work stoppage if payment was not made immediately. ( See, Tab 7)

As has been addressed in detail in Plaintiff's prior brief, ultimately the Plaintiff acquiesced to the demands of the Defendant and authorized the wire of $100,000.00 from Massachusetts to the Cayman Islands. The Plaintiff's acquiescence was predicated on

Ronald Zimmer's statement made to the Plaintiff in his office in Cambridge, MA that he would be at the Plaintiff's home in the Cayman Islands on December 27, 2003 to review the overage costs with the Plaintiff and refund him any overpayments. As we know and as has been admitted by the Defendants, after receiving the Plaintiff's money, Ronald Zimmer and his wife left the Cayman Islands on December 21, 2003, without notifying the Plaintiffs. (Second Affidavit of Paul Gargano, para. 20) The Plaintiff's have never received an accounting or the invoices that they requested.

It is these aforementioned correspondences, among others, that gave rise to the consumer fraud, which was ultimately perpetrated to its completion upon the Plaintiff in Massachusetts.

**ARGUMENT:**

**A Finding Of Personal Jurisdiction Would Comport With Due Process:**

In their Reply Brief the Defendants cite the case of <u>Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC, 273 F.Supp. 2d 172 (D. Mass 2003)</u> in support of an argument that this case represents an instance of harassing litigation. However, the Defendants' misconstrue the holdings of in their argument. In fact, District Judge Lindsay ruled in <u>Champion</u> that personal jurisdiction did in fact exist in Massachusetts where a Nevada-based electrical business contracted with a Massachusetts corporation. In fact, in analyzing the Defendant's burden of appearing, Judge Lindsay states:

> **I do not doubt that it would be burdensome for Hi-Tech to defend itself in Massachusetts. However, this is a problem for any party litigating in a foreign jurisdiction, and the First Circuit has held that a defendant seeking to avoid the costs and burdens of litigating far from home must demonstrate that being subject to jurisdiction in a distant forum 'is onerous in a special,**

**unusual or other constitutionally significant way.'** *(Emphasis Added)*(<u>Citing</u> <u>Nowak v. Tak How Investments</u>, Ltd. 94 F.3d 708, 717 (1st Cir.1996))

The Defendants in this matter have not once proffered that their appearance in Massachusetts would be onerous, special, unusual or significant constitutionally. They have merely stated that "it would be more than a 'minimal burden' for them to defend" the litigation at hand. (Defendants Reply Brief, p. 8) The Defendants seek to shelter themselves from Massachusetts under the guise that they cannot leave the Cayman Islands. Such a statement once again evidences itself to be patently untrue. Ronald Zimmer states that he "no longer" has a home in Florida. (Second Affidavit of Ronald Zimmer) The Defendants sold this property just months before the onset of this litigation. Further, numerous phone calls were made to the Plaintiff over the past three years from the Defendant from different locations within the United States (Second Affidavit of Paul Gargano, para. 10)). The Defendant cannot deny that he was in Pennsylvania six months ago when he falsely assured the Deputy Sheriff of Washington County that he would come to the Sheriff's department to pick up the Plaintiff's complaint and summons. (See, Tab 8) Moreover, it is undisputed that there is and has continuously been an office of Zimmer & Associates in Fruitland Park, Florida. (See, tab 9)

Furthermore, the Plaintiff has submitted to the Court numerous documents evidencing the Defendants' intent to build a business relationship with the Plaintiff. Inasmuch, the <u>Champion</u> case supports the Plaintiff's contention that it is entirely foreseeable for the Defendants to be sued in Massachusetts. In the decision, Judge Lindsay states, "These contacts, intended to build and maintain a relationship with a Massachusetts corporation, rendered foreseeable the possibility of being haled into a Massachusetts Court...". (Id at 178)

In further support of the Plaintiff's position in this matter, Judge Lindsay in the

Champion case states:

> **I note that my role in evaluating this evidence is not that of a fact finder; Rather, properly made assertions by Champion are taken as true, and Hi-Tech's amenability to jurisdiction in this court is to be determined as a matter of law. (Emphasis Added)** Citing United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st.Cir.2001).

The Plaintiff properly asserts that Massachusetts is the **only** state with an interest

in this dispute. The center of this consumer fraud is solely and entirely related to the

Defendant projecting into Massachusetts instruments designed to cause harm to the

Plaintiff in Massachusetts, in violation of a Massachusetts statute, and causing tortuous

injury to a Massachusetts resident. In making knowingly fraudulent statements to the

Plaintiff in Massachusetts, the Defendants intended to perpetrate a fraud that would be

realized and relied upon by the Plaintiff in the Commonwealth. Better Boating Assoc.,

Inc. v. BMG Chart Prods., Inc. 1998 WL 408976 at 5 (Mass. Super Ct. July 10, 1998)

("tortuous conduct [must] occur in Massachusetts, rather than simply affect a

Massachusetts resident').

In its most basic essence, the Defendants in this matter secured a position of trust

and confidence with the Plaintiff and used the opportunity of that relationship to extract

and extort money from the Plaintiff in Massachusetts. Through their communications

with the Plaintiff in Massachusetts including assurances that this experience would be

pleasant and that it would be completed on time and on budget the Defendants created an

atmosphere in which they could lull the Plaintiff into a false sense of security in their

relationship and then take advantage of that fact for their own gain by causing the

Plaintiff to rely on the assurance of the Defendants that an accounting and review of costs

would take place on December 27, 2003, when in fact the Defendants knew they would not even be in the country on that date.

The Defendants took advantage of their business relationship and used the factors of time constraints, distance between the parties and trust of the Plaintiff to make representations of fact and promises known to be false with the specific intent to induce the Plaintiff to take action in Massachusetts which was to his detriment. This action constitutes the transaction of business in Massachusetts. Murphy v. Erwin-Casey, Inc. 460 F.2d 661 (1st Cir. 1972)(For purpose of Massachusetts Long Arm Statute where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of the resident of that state, he has for jurisdictional purposes, acted within that state.) It also constitutes a violation of M.G.L. c. 93A. "An act is 'deceptive' under Massachusetts unfair competition and unfair deceptive acts statute if it could reasonably be found to have caused the person to act differently from way he otherwise would have acted." Tagliente v. Himmer, 949 F.2d 1, (1991). The court in Workgroup noted " It is the location of the person to whom the deceptive statements are made rather than the location of the person who uttered the deceptive or unfair statements that is significant in the context of Massachusetts law governing unfair and deceptive practices. Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102, 117 (2003) The victims ingestion of a deceptive statement and subsequent reliance is what gives the statement its venomous sting. Workgroup, citing, Clinton Hospital Assoc v. Corson Group, Inc. 907 F.2d. 1260 at 1266 (1st Cit. 1990)

The Defendants actions, which were directed into the forum of Massachusetts, are more than sufficient to confer personal jurisdiction over them as to the claims alleged by

the Plaintiff. See, Workgroup infra, (The plaintiff pointed to four telephone calls, five

emails and three faxes sent by the Defendant to the Plaintiff in Massachusetts over a three

month period as evidence of sufficient contacts to establish personal jurisdiction within

Massachusetts over the Defendant.) See Also, Calder v. Jones, 465 U.S. 783, 104 S.Ct.

1482 (1984)(An individual injured in California need not go to Florida to seek redress

from persons who though remaining in Florida, knowingly cause the injury in California.)

As in Calder, the Defendants in this case focused their actions at the Plaintiff in

Massachusetts and knowingly caused injury to the Plaintiff in Massachusetts through

their false statements emanating from a foreign jurisdiction (in this case Cayman Islands)

and as in Calder the Plaintiff should not be made to pursue his redress in a foreign

jurisdiction when the injury was occurred in his own backyard, or more specifically,

while he was sitting at his desk in Cambridge, Massachusetts. As the court stated in

Calder, "An individual injured in California need not got to Florida to seek redress from

persons, who though remaining in Florida, knowingly cause the injury in California." Id.

at 790.

The Defendants in this matter are not suggesting that an alternative forum in the

United States is proper; rather they are stating that they should be relieved of having to

appear entirely in the United States. This is absurd and would be akin to a person

launching a projectile into the United States and causing harm to United States citizens

and then claiming that the United States was powerless to take action because the

projectile emanated from a foreign country. Principles of equity and justice dictate that

the Defendants should not be allowed to avoid the jurisdiction of the federal courts by

claiming sanctuary in Cayman Islands. As he acknowledges, Ronald Zimmer is a US

citizen. He is necessarily subject to the jurisdiction of the courts of the United States especially when he causes harm to a fellow citizen of the United States in the United States.

The wrong being alleged by the Plaintiffs is based on statutory law protecting consumers of the Commonwealth of Massachusetts, which is where the Defendants actions were directed and where the injury was sustained and which has its basis in similar federal legislation. The Plaintiff cannot be sure the same or similar relief exists in the Cayman Islands. The location and setting where the home was to be built is entirely incidental to the harm which the Plaintiff alleges, which occurred in Massachusetts. Other than the Defendants, it will not be necessary for witnesses in Cayman Island to be present in Massachusetts in order to prosecute this matte, as the Plaintiff can prosecute his case with the Plaintiff, Defendants and through documents admissible pursuant to the federal rules of evidence.

The Plaintiff should not be burdened with having to prosecute this action in a forum outside of the Commonwealth of Massachusetts when the harm was felt in Massachusetts and the defendants' actions were specifically directed into the Commonwealth. The choice of forum is the Plaintiff's and in the absence of the Defendant identifying any other forum in the United States that is more appropriate, the Federal courts must provide a forum for persons such as the Plaintiff who have suffered injuries in the United States.

Massachusetts clearly has the most important interest in a dispute arising out of a defendant non-resident's tortuous and fraudulent fleecing of the monies of a citizen of the Commonwealth. It is inconsequential what the subject of the Defendants' services was.

## Conclusion

The Plaintiff has made a prima facie showing that personal jurisdiction exists over the Defendants as it pertains to the claims in this case. Plaintiff has affirmatively asserted sufficient facts accompanied by documentation which demonstrate that (1) the Defendants in this matter transacted business in the Commonwealth when they pursued and ultimately retained the business of the Plaintiff, a Massachusetts resident who consummated an agreement in Massachusetts; (2) the Plaintiff was caused to suffer injury in Massachusetts when he authorized the release of $100,000.00 from Massachusetts in reliance on the knowingly false and deceptive communications the Defendants sent into Massachusetts with the intent that Plaintiff rely on said statements in Massachusetts to his detriment; (3) that due process is satisfied because the Defendants contacts with the forum relate directly to claims asserted by Plaintiff and Defendants actions represent a purposeful availment of the privilege of conducting business in Massachusetts where they solicited and chose to do business with a Massachusetts resident and accepted money from Massachusetts to their benefit and (4) the "Gestalt" factors weigh in favor of jurisdiction in Massachusetts where the defendant has not shown any unique burden in appearing in Massachusetts; Massachusetts has the overriding interest in this case where the injury was suffered in Massachusetts and is based on Massachusetts legislation; the Plaintiff is a resident of Massachusetts and has an interest in convenient and effective relief for the harm caused him in his community; and the most effective resolution of the controversy can be had here in Massachusetts as the case involves the laws of Massachusetts and the interests of all sovereigns dictates that Massachusetts should

provide a forum for its citizens who are injured in the state by the actions of those who

solicit and choose to transact business in the Commonwealth.

The Plaintiff has met his burden and the Defendants Motion must be denied.


Respectfully Submitted
By the Plaintiff,

/s/ Sean Beagan

_____
Paul A. Gargano
BBO# 185560
Timothy Scannell
BBO# 655453
Sean M. Beagan
BBO# 644929
Gargano & Associates
4 Canal Park
Cambridge, MA 02141
617-621-1100

July 22, 2004

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS, ss.                C.A. No.  03-cv-12605

PAUL A. GARGANO          )
        Plaintiff,        )
                          )
v.                      . )
                          )
                          )
RONALD ZIMMER, CELITA ZIMMER  )
and ZIMMER & ASSOCIATES   )
        Defendants        )
                          )

## SECOND AFFIDAVIT OF PAUL GARGANO

I, Paul A. Gargano, attest and aver that the following facts are true and accurate:

1.  I am the Plaintiff in the above captioned-matter. I am a United States citizen, I am not a citizen of the Cayman Islands only a resident by grant of status.

2.  I am making this affidavit for the purposes of responding to the false allegations contained in Ronald Zimmer's Second Affidavit and the Affidavit of Diane Henderson and to further elaborate on the facts relating to personal jurisdiction over the defendants in this matter.

3.  Mr. Zimmer's Second Affidavit contains numerous false statements designed to mislead the court into believing that he rarely leaves Cayman Island and that all negotiations, including execution of the contract took place in Cayman Islands. This assertions are simply not true.

4.  Ronald Zimmer is a United States Citizen.

5.  Paragraph 4 of Mr. Zimmer's Second Affidavit is false. Mr. Zimmer does in fact divide his time between Pennsylvania, Florida and Cayman Islands. It is known that Mr. Zimmer was in Pennsylvania around the holidays in 2003 and that he travels frequently to Florida, where he has owned property, engaged in construction and where he has family. Mr. Zimmer's statement that he is a full time minister is also false. As evidence of this Mr. Zimmer spent more than a

year constructing a home for me and my wife and he has other construction projects that are ongoing.

6.  Paragraph 5 of Ronald Zimmer's Second Affidavit is designed to mislead this Court into believing that I had a plan to use Mr. Zimmer to build a new home as far back as ten years ago. Any conversations I had with Mr. Zimmer ten years ago were in passing and have nothing to do with the current litigation or the question of personal jurisdiction.

7.  Paragraph 6 of Ronald Zimmer's Second Affidavit is similarly designed to mislead this court in the same manner as paragraph 5.

8.  Paragraph 7 of Ronald Zimmer's Second Affidavit is false. At no time was I insistent on using Ronald Zimmer or his company to construct a home for me. In fact, during the period of my negotiations with Ronald Zimmer for the construction of my present home I was being solicited by other contractors who were interested in the project. I ultimately decided to use Ronald Zimmer for a variety of reasons not least of which was the fact that he is a U.S. citizen and had constructed homes in the United States.

9.  Paragraph 10 of Ronald Zimmer's Second Affidavit is completely false. Ronald Zimmer visited my wife and I only one time at our house in Cayman Islands sometime in 2001 to discuss the possibility of building a new home. The meeting began as an unannounced social visit by Mr. Zimmer. He expressed his desire to build a house for me. At the time, no plans had been drawn up and the concept of building a new home was simply an idea being considered. No agreements were reached at that time and no decisions to move forward with the project were made at that time. This visit took place in March 2001.

10. For a year following the March 2001, Mr. Zimmer continued to solicit my business while I was in Massachusetts. Communications between us were by way of telephone and fax. Mr. Zimmer contacted me from Cayman Island, Florida and Pennsylvania and I have attached phone records and messages from my office in support of this statement. Numbers with a 724 exchange are from Pennsylvania, numbers with a 345 exchange are from Cayman Islands, numbers with an 813 exchange are from Florida. Additional phone calls were made by Ronald Zimmer to my home in Hyannis, MA during this same period. (Tab 1, phone records and phone messages regarding Ronald Zimmer)

11. Mr. Zimmer sent me a letter on March 26, 2002 which clearly indicates that the discussions regarding building a house in Cayman had been going on for a year. (Tab 2, Letter from Ronald Zimmer to Paul Gargano, dated March 26, 2002.)

12. During his solicitation of my business I made it clear to Mr. Zimmer that price was a concern and that I had only a set amount of money to devote to this project. Mr. Zimmer procured an architect, William Tucker, to draw up some preliminary

plans and proposed plans were sent to me in Massachusetts and discussions between us continued until a final plan had been agreed upon, which Mr. Zimmer assured me could be constructed within my budget due to the stagnant state of construction in Cayman Islands at that time. (Tab 3, September 18, 2001 letter from Ron Zimmer to the Gargano's in Massachusetts, accompanied by architect's drawings)

13. Paragraph 12 of Mr. Zimmer's Second Affidavit is also false. Mr. Zimmer did not hand me a contract signed by his wife prior to my leaving the Cayman Islands in April 2002. My passport clearly indicates that I left Cayman Island on April 13, 2002. The contract was signed by Celita Zimmer on behalf of Zimmer & Associates on April 17, 2002. Records obtained from the government of the Cayman Islands indicates that Zimmer & Associates, Ltd. was not formed until April 16, 2002. Therefore, there is no way that Ronald Zimmer could have handed me a contract signed by Celita Zimmer on behalf of Zimmer & Associates prior to my leaving the island. (Tab 4, Passport entries of Paul Gargano, Tab 5, record of Cayman Islands Government regarding formation of Zimmer & Associates, Ltd.)

14. The fact of the matter is that the contract was Fed-Ex'd by the Zimmers from Florida to my home in Hyannis, MA, where I signed it. I originally mailed a copy by first class mail to the address in Florida where it originated. I also fed-ex'd a copy of the contract to Mr. Zimmer at his request on or about April 22, 2002.

15. Paragraph 13 of Ronald Zimmer's Second Affidavit is completely false for all the reasons set forth in paragraphs 8 and 9 above.

16. Paragraph 14 of Ronald Zimmer's Second Affidavit is false. As set forth in the fourth paragraph of the contract for construction of the home, it was understood between the parties before the contract was signed that my wife and I would be selecting materials from Home Depot for use in the home.

17. Mr. Zimmer's allegation in paragraph 15 of his Second Affidavit that he never agreed to come to Massachusetts to meet with my wife and I if necessary is false. He did in fact make this representation to both my wife and me.

18. Mr. Zimmer's statement in paragraph 16 of his Second Affidavit that he had nothing to do with the choosing of materials is false. Mr. Zimmer and I had specific conversations regarding the materials to be used in the home and employees of Zimmer and Associates communicated directly with EXPO design in Massachusetts. For example, we had specific conversations by telephone from my office in Cambridge and my home in Hyannis regarding the manufacturer of windows, wherein Mr. Zimmer advised me to use Anderson not Pella windows. There were also specific conversations by fax and telephone between Massachusetts and Cayman Islands regarding cabinets, fixtures and design

changes. I have attached correspondence supporting my statements to this affidavit. (Tab 6, Correspondence from Zimmer and Associates to EXPO Design)

19. The statements in paragraph 17 of Ronald Zimmer's Second Affidavit are false. Zimmer and Associates has been paid in excess of the contract amount and final payment pursuant to the contract was paid in November 2003 prior to completion of the house.

20. Mr. Zimmer's statement in paragraph 18 wherein he indicates that I knew he was leaving on December 21 to spend Christmas in Pennsylvania is false. In fact, I specifically relied on his statement made to me in my office in Cambridge, MA that he would meet me in Cayman Islands on December 27, 2003 to review the overage costs with me as a condition of me paying him the $100,000.00 that is being disputed. (Tab 7, Correspondence from Zimmer to Gargano regarding overage)

**Affidavit of Diane Henderson:**

21. The statements in paragraph 3 of Diane Henderson's Affidavit are misleading as to the amount of time I spend in the Cayman Islands. The time I spend in the Cayman Islands is dictated by my work schedule. During the period of the project from April 2002 – December 2003 I was in the Cayman Islands for a total of 6 weeks.

22. Paragraph 5 of Diane Henderson's Affidavit is false and unrelated to the present topic of personal jurisdiction.

23. Paragraph 6 of Diane Henderson's Affidavit is false except for the final sentence in which she states that I allege she owes me money.

24. Paragraph 7 of Diane Henderson's Affidavit is false. Mr. Zimmer solicited my business for a year and convinced me he could build me a house within my budget that my wife and I would be happy with. (See Tab 2)

25. Paragraph 8 of Diane Henderson's Affidavit is false as to whether anyone convinced me to build my new house. Ronald Zimmer convinced me through his repeated solicitations of me in Massachusetts that he could build me a house within my budget. I spoke with Dale Bever, Diana Henderson's brother, and provided him with a copy of the plans to take to his boss, Michael Dyce for review and an estimate. Mr. Bever brought the plans back to me and told me that the project would cost $400.00 a square foot. I later discovered upon speaking with Michael Dyce that Mr. Bever had never shown him the plans. Both Mr. Dyce and Mr. Bever are US citizens.

26. Paragraph 9 of Diana Henderson's Affidavit is false. My home was not habitable as of December 2003. In fact a certificate of occupancy was not even obtained

until the later part of January 2004. There was inadequate electricity in the home to run appliances. This fact is supported by the affidavit of Eric Grundy attached hereto.

27. Paragraph 10 of Diane Henderson's affidavit supports my allegation that the house was not ready by December 23, 2003 as Mr. Zimmer has represented in affidavits before this court. The fact that a Zimmer & Associates employee was present at the home throughout the holidays indicates that the home was not completed. Mr. Zimmer's representation made to me in my office in Cambridge, MA that the home would be finished for my arrival on December 27, 2003 was another false statement on which I relied in paying him the $100,000.00.

28. Diane Henderson's statement in paragraph 11 of her Affidavit that my wife and I arrived in Cayman Kai in January 2004 is false. I arrived in Cayman Islands on February 10, 2004 and left on February 23, 2004.

Signed under the pains and penalties of perjury, this 22nd day of July, 2004

Paul Gargano