UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL A. GARGANO | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 03-12605-NG |
| | ) | |
| RONALD ZIMMER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON**
<u>**DEFENDANTS' MOTION TO DISMISS**</u>

September 23, 2004

DEIN, U.S.M.J.

## I. INTRODUCTION

By his Amended Complaint (Docket No. 3), the plaintiff Paul A. Gargano

("Gargano") asserts claims against the defendants, Ronald Zimmer, Celita Zimmer,[1] and

Zimmer & Associates Ltd. (collectively, the "Zimmers"), for violations of the

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Counts I-III),

wrongful interference with a contractual agreement (Counts IV-VI), breach of contract

(Counts VII-IX), and fraud in the inducement to enter into a contract (Counts X-XII)

arising out of a dispute concerning the defendants' construction of a home for Gargano in

the Cayman Islands. Presently before the court is the defendants' Motion to Dismiss for

---

[1] The complaint asserts claims against "Zelita" Zimmer. According to the defendants, however, the proper spelling of Ms. Zimmer's name is "Celita."

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 28).[2]  For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss be ALLOWED.

## II.  STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998), citing cases.  Where, as here, the court elects to dispose of a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court applies a "prima facie" standard of review pursuant to which the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 43-44 (1st Cir. 1993) ("Pleasant St. II") (internal quotation omitted).  Under this standard, the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits.  Id.; Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26

---

[2]  Also before the court is the Plaintiff's Motion to Strike Defendants' Reply Brief (Docket No. 37) and the Plaintiff's Motion to Strike Affidavit of Diana Henderson (Docket No. 39).  The court has given plaintiff full opportunity to respond to the reply brief and the contested affidavit, and can determine the appropriate weight to be given the allegations contained therein.  Therefore, the Motions to Strike are DENIED.

F.3d 201, 203 (1st Cir. 1994). The court will accept specific facts affirmatively alleged by the plaintiff as true and construe disputed facts in the light most favorable to the plaintiff. See Mass. Sch. of Law, 142 F.3d at 34; Sawtelle, 70 F.3d at 1385. In doing so, however, the court will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, 26 F.3d at 203.

### Background

The relevant facts, set forth in the light most favorable to the plaintiff's jurisdictional claim, are as follows. Plaintiff Gargano is a United States citizen who maintains a primary residence and office in Massachusetts. (Affidavit of Paul Gargano ("Gargano Aff.") ¶ 2; Second Affidavit of Paul Gargano ("2d Gargano Aff.") ¶ 1).[3] Gargano is also a resident, by grant of status, of the Cayman Islands, British West Indies, where he and his wife own property. (2d Gargano Aff. ¶¶ 1, 9).

The plaintiff met defendants, Ronald and Celita Zimmer, in the Cayman Islands, where the Zimmers reside with their four children. (Affidavit of Celita Zimmer ("C. Zimmer Aff.") ¶¶ 4, 5).[4] Celita Zimmer is a Caymanian citizen and Ronald Zimmer is a Caymanian by grant of status. (Id. ¶ 4). Although the Zimmers own property in

---

[3] The Affidavit of Paul Gargano is attached to the "Plaintiff's Memorandum in Support of His Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 33) as Exhibit 1. The Second Affidavit of Paul Gargano is attached to "Plaintiff's Further Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 43).

[4] The Affidavit of Celita Zimmer is attached to the "Memorandum in Support of Defendants' Motion to Dismiss" (Docket No. 29).

Pennsylvania and conduct some business in Florida, they conduct no business in Massachusetts and have not visited the state in over twenty years. (Affidavit of Ronald Zimmer ("R. Zimmer Aff.") (Docket No. 30) ¶ 4; Second Affidavit of Ronald Zimmer ("2d R. Zimmer Aff.") (Docket No. 41) ¶ 4). Celita Zimmer is the principal and Ronald Zimmer is an employee of defendant Zimmer & Associates, a construction company that builds homes in the Cayman Islands. (C. Zimmer Aff. ¶ 2). Zimmer & Associates is registered to do business in the Cayman Islands and has its principal place of business there. (Id.) The company has no offices in the United States, does not advertise in the United States, and does no construction business in the United States. (R. Zimmer Aff. ¶ 3).

Over the course of about a year, Gargano and Ronald Zimmer engaged in negotiations concerning the terms of an agreement whereby the Zimmers would construct a home for Gargano in the Cayman Islands. (See 2d Gargano Aff. ¶ 9 & Ex. 2). Throughout the negotiations, Ronald Zimmer contacted Gargano in Massachusetts by telephone and facsimile. (See, e.g., Gargano Aff. ¶ 8; 2d Gargano Aff. Exs. 1-3). According to Gargano, Zimmer was persistent in his efforts to obtain the plaintiff's business and consummate an agreement. (Gargano Aff. ¶ 10)

In April 2002, the parties signed a contract for the demolition of Gargano's existing home in the Cayman Islands and the construction of a new home at the same site. (See Plaintiff's Memorandum in Support of His Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Plaintiff's Memo.") (Docket No. 33) at

Ex. 2). The agreement provided that Gargano would pay the defendants a total sum of $1,120,000 for their work. (Id.) It also anticipated that certain materials would be purchased in the United States and shipped to the Cayman Islands for use in the house. (Id.) Accepting the plaintiff's factual assertions as true, Celita Zimmer signed the contract on behalf of the defendants and sent it to Gargano in Massachusetts, where he executed the document. (Gargano Aff. ¶¶ 21-24; compare Zimmer Aff. ¶ 8 - Gargano agreed to the contract in the Cayman Islands).

Because the plaintiff remained in Massachusetts during much of the construction process, which began in late 2002, the parties communicated largely by telephone, facsimile and e-mail. (Gargano Aff. ¶ 25). Ronald Zimmer estimated that there was about one e-mail communication between the parties every two weeks. (R. Zimmer Aff. ¶ 9). Consistent with the contract, the plaintiff purchased many of the finish materials for the project in Massachusetts. (Gargano Aff. ¶ 28). The defendants communicated directly with at least one Massachusetts supplier regarding materials to be used in Gargano's home. (See 2d Gargano Aff. at Ex. 6).

In October 2003, the relationship between the parties began to sour. On October 10, 2003, Ronald Zimmer sent an e-mail to Gargano in Massachusetts in which Zimmer requested "the next payment sum of US $100,000.00 plus some additional funds to cover some of the upgrades that we are having to lay out for." (Plaintiff's Memo. at Ex. 4). In response to Zimmer's request for payment to cover the cost of upgrades, Gargano asked that Zimmer provide him with the suppliers' invoices and an opportunity to compare the

upgrade cost with the allowances that had been provided for in the parties' contract, and informed Zimmer that he felt he was being coerced into making payments "under duress." (Gargano Aff. ¶ 32; Plaintiff's Memo. at Ex. 5).  Gargano asserts that the defendants never sent him all the invoice information that he requested.  (Gargano Aff. ¶ 58). Nevertheless, the Zimmers continued to contact Gargano in Massachusetts to demand payment for upgrades.  (See Plaintiff's Memo. at Exs. 9-11; 2d Gargano Aff. at Ex. 7).  In addition, according to Gargano, the Zimmers threatened to delay completion of the house and noted that the occupancy permit could not be provided until Gargano agreed to forward the disputed payment.  (Gargano Aff. ¶ 44; Plaintiff's Memo. at Ex. 10).

Fearing that the house would not be ready by December 27, 2003, when Gargano intended to arrive in the Cayman Islands with his family for the holidays, Gargano decided to make the disputed payment, but only if Ronald Zimmer agreed to review the upgrade costs with Gargano and to refund any overpayment.  (See Gargano Aff. ¶¶ 36, 46, 48).  After receiving the necessary assurances from Zimmer, and while still in Massachusetts, Gargano authorized the release of $100,000 to the defendants.  (See Gargano Aff. ¶¶ 48-49).

Notwithstanding his efforts to avoid a delay in the completion of the project, Gargano determined that the house would not be habitable for the holidays as the defendants had promised, and that the defendants would not be present to review the account, so Gargano cancelled his trip.  (Gargano Aff. ¶¶ 36, 51-54).  In fact, an occupancy permit was not issued for the house until January 2004, and no occupancy permit has ever been

issued for the garage. (Gargano Aff. ¶ 56; Plaintiff's Memo. at Ex. 13). In addition, according to Gargano, Zimmer never fulfilled his promises to review the upgrade costs and to refund any overpayment. (See Gargano Aff. ¶¶ 48, 57). Moreover, Gargano alleges that he was forced to incur additional costs to make his home habitable as a result of the defendants' failure to complete the project. (See Gargano Aff. ¶ 55).

### III.   DISCUSSION

#### A.   Personal Jurisdiction Analysis

In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the due process clause of the Fourteenth Amendment. Sawtelle, 70 F.3d at 1387; Ticketmaster-New York, 26 F.3d at 204. Massachusetts' long-arm statute, Mass. Gen. Laws ch. 223A, § 3 (2000), authorizes jurisdiction over the person to the limits allowed by the federal Constitution.[5] See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) ("the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" (quoting 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)). Consequently, the court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis. . . ." Id.; see also

---

[5] The Massachusetts long-arm statute defines "person" to include individuals and corporations. Mass. Gen. Laws ch. 223A, § 1.

Sawtelle, 70 F.3d at 1388 ("when a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards."). Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Accordingly, "the accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

The court may exercise two types of jurisdiction — general or specific. "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state'." Massachusetts Sch. of Law, 142 F.3d at 34 (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) ("Pleasant St. I")). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Id. Gargano does not argue, and the court finds no facts to suggest, that this court may exercise

general jurisdiction over the Zimmers. The task at hand, therefore, is to determine whether the court may exercise specific personal jurisdiction over the defendants.

The court must use a three-part analysis to determine whether there are sufficient contacts to exercise specific personal jurisdiction over the Zimmers. See Sawtelle, 70 F.3d at 1388-89. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Acad., 196 F.3d at 288. First, the court must decide whether the claim underlying the litigation relates to or arises out of the defendant's activities within the forum. See id. This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster-New York, 26 F.3d at 206. See also Sawtelle, 70 F.3d at 1389. It ensures that the defendant will not be subject to specific personal jurisdiction unless the defendant's contacts with the forum state caused the alleged harm. See Ticketmaster-New York, 26 F.3d at 207.

Second, the court must determine whether the defendant's contacts with the forum "'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable'." Sawtelle, 70 F.3d at 1389 (quoting Pleasant St. I, 960 F.2d at 1089). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Id. at 1391. Voluntariness is present where a defendant deliberately has engaged in significant activities within the forum, but not where the defendant's contacts with the forum are

"random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed.2d 528 (1985) (internal quotations and citations omitted). Foreseeability exists where the defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into court there. See id. at 474, 105 S. Ct. at 2183; Sawtelle, 70 F.3d at 1393.

Finally, if the first two parts of the test for specific jurisdiction have been fulfilled, the court must decide whether the exercise of personal is reasonable in light of the "Gestalt factors". See Sawtelle, 70 F.3d at 1389; Pleasant St. II, 987 F.2d at 46. "These Gestalt factors include: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Pleasant St. II, 987 F.2d at 46. Even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. See Burger King, 471 U.S. at 476-478, 105 S. Ct. at 2184-85; Ticketmaster-New York, 26 F.3d at 209-10.

"[A]n especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Ticketmaster-New York, 26 F.3d at 210. On the other hand, "the weaker the plaintiff's showing on the first two prongs

(relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. As detailed below, the plaintiff has not established that the defendants have satisfied the "purposeful availment" prong of the jurisdictional test. Moreover, application of the Gestalt factors compels the conclusion that it would be unfair for this court to exercise personal jurisdiction over the defendants.

### B. Jurisdiction Over the Defendants

#### 1. Relatedness

In evaluating relatedness, the court is mindful that "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Acad., 196 F.3d at 289. In this case, the plaintiff has asserted both contract and tort claims. Because this court finds that Gargano has alleged sufficient facts necessary to show that his contract claims are related to or arise from the Zimmers' contacts with Massachusetts, and because Gargano's remaining claims, although styled as torts, arise out of the same negotiation and performance of the parties' contract for construction of Gargano's home, it is unnecessary to address whether plaintiff's tort claims also meet the relatedness requirement of the jurisdictional analysis.[6]

---

[6] In his Amended Complaint, in addition to his breach of contract claims, the plaintiff alleges that (1) the defendants violated the Massachusetts Consumer Protection Act by willfully violating the parties' contractual agreement, (2) the defendants wrongfully interfered with the parties' contract by ordering subcontractors to cease work on the construction of Gargano's house, and (3) the defendants fraudulently induced Gargano to enter into an agreement for the construction of a house even though the defendants never intended to comply.

In contract cases, the court "must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Id. Although the defendants never physically appeared in Massachusetts, and the construction work that they performed pursuant to their contract with the plaintiff took place in the Cayman Islands, the facts alleged by Gargano are sufficient to show that the Zimmers' contacts with the Commonwealth were instrumental in the formation of the parties' contractual agreement as well as its alleged breach.[7] The year-long contract negotiations, involving numerous telephone calls, e-mails and faxes sent by the Zimmers to Gargano's home in Massachusetts constitute contacts with the Commonwealth for purposes of the jurisdictional analysis. See Massachusetts Sch. of Law, 142 F.3d at 36 ("The transmission of facts or information into Massachusetts via telephone or mail would of course constitute evidence of a jurisdictional contact directed into the forum state. . . ."). The Zimmers' effort to solicit Gargano's business while he remained in the forum is further evidence that the defendants' contacts with Massachusetts gave rise to the formation of the contract. See Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1083-84 (1st Cir. 1973) (soliciting business from a resident of the forum state considered a contact). Similarly, the solicitation of payments which Gargano contends constitute a breach of contract

---

[7] Gargano alleges that the defendants breached the terms of their agreement with him by failing to complete the construction of the house on time and by demanding further payments from the plaintiff in excess of the contract allowances. (Amended Complaint ¶¶ 59-93).

involved communications with Gargano while he was in Massachusetts. In sum, the facts alleged by the plaintiff constitute enough evidence to satisfy the "flexible" and "relaxed" relatedness requirement. See Pritzker, 42 F.3d at 61 ("the relatedness test is, relatively speaking, a flexible, relaxed standard.").

### 2. **Purposeful Availment**

While satisfying the relatedness requirement, the plaintiff has not established that the Zimmers' contacts with Massachusetts satisfy both elements of the purposeful availment prong of the jurisdictional inquiry. Thus, while the Zimmers' repeated communications with Gargano in Massachusetts are sufficient to satisfy the "voluntariness" element of purposeful availment, the facts do not establish that the defendants' conduct was such that they should have reasonably foreseen being haled into court here.

Specifically, the fact that the Zimmers solicited Gargano's business while he was in Massachusetts, communicated with him here about the formation of the contract as well as the progress of construction, contacted at least one Massachusetts supplier regarding materials to be used in Gargano's home, and corresponded with Gargano in the Commonwealth concerning the payment dispute constituted sufficient activities within the forum to satisfy the voluntariness requirement. See Burger King Corp., 471 U.S. at 475, 105 S. Ct. at 2183. Thus, the Zimmers purposefully and deliberately reached out to the plaintiff's state of residence to create a relationship with the plaintiff and to facilitate the implementation of their agreement with the plaintiff. See Phillips Exeter Acad., 196

F.3d at 292 (evidence of voluntariness may be found where a defendant reaches into the forum to create a relationship with the plaintiff).

Nevertheless, "[e]ven if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable." Id. Here, the defendants did not. For example, the Zimmers never visited Massachusetts or conducted business in the forum, and there is no evidence that they ever received payments in the forum. The subject of the Zimmers' negotiations with the plaintiff concerned a single construction project which was to take place in the Cayman Islands. Indeed, the parties' agreement was implemented in the Cayman Islands, and the dispute that resulted in this litigation arose out of the construction activities that were occurring in the Cayman Islands. Any contacts with Massachusetts occurred only because the plaintiff happened to reside here. Gargano has not demonstrated that the Zimmers benefitted from the protections of Massachusetts law as a result of their contacts, or otherwise established continuing obligations between themselves and the forum state. See id. (no foreseeability where the defendant received no benefit from the protections of the forum's law); Sawtelle, 70 F.3d at 1393 ("The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between itself and the forum state."). The Zimmers' contacts, therefore, are insufficient to meet the "foreseeability" requirement of the purposeful availment test.

### 3. The Gestalt Factors

Even if Gargano had met the first two prongs of the jurisdictional test, the Gestalt factors would tip the balance in favor of denying jurisdiction. With respect to the first element – the defendants' burden of appearing – which is considered a "primary concern" among the Gestalt factors, see Ticketmaster-New York, 26 F.3d at 210, the record establishes that the burden associated with forcing the defendants to appear in a Massachusetts court is substantial. In contrast to cases in which courts have acknowledged the inconvenience and costliness of litigating in a foreign jurisdiction, but have refused to find the burden special or unusual, the defendants here are neither large companies nor individuals who regularly travel to Massachusetts to conduct business. Compare Jet Wine & Sprits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 11-12 (1st Cir. 2002) (international company doing business in the United States cannot expect to escape the reach of United States courts); Sawtelle, 70 F.3d at 1395 (burden of defending suit in a foreign jurisdiction not unusually burdensome where defendant law firm regularly represented clients outside its home state); Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp.2d 102, 115 (D. Mass. 2003) (hotel company failed to show that litigating in a different state would be unusually onerous). Rather, the defendants in this case are individuals with small children. Their company, which builds homes in the Cayman Islands, transacts no business in Massachusetts and has no offices in the United States. Furthermore, because the claims involved in this litigation arise out of a construction project in the Cayman Islands, and relate to the quality and completeness of

the construction work, it is likely that some of the witnesses reside and work in the Cayman Islands.[8] Under these circumstances, it would be especially onerous for the defendants to present evidence in a Massachusetts court.

The second Gestalt factor, concerning the forum state's interest in adjudicating the dispute, also cuts in favor of declining jurisdiction. It is well-established that "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp., 471 U.S. at 473, 105 S. Ct. at 2182 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957)). Nevertheless, where, as here, the litigation arises out of activities that took place elsewhere, involves real estate that is located elsewhere, and is brought by an individual who is at least a part-time resident of the foreign jurisdiction, Massachusetts' interest is not especially strong. See Ticketmaster-New York, 26 F.3d at 211 (a court's interest in litigation is diminished where the acts giving rise to the action took place outside the forum).[9]

---

[8] The plaintiff argues that he would need no witnesses other than himself and the defendants in order to prosecute his case. The defendants, however, argue that their third-party witnesses are located in the Cayman Islands.

[9] The plaintiff's argument that the injury occurred in Massachusetts is unconvincing. The essence of the plaintiff's claims is that the defendants failed to comply with the terms of the parties' contract by failing to complete the construction of a house in the Cayman Islands in a timely manner and by extracting payments from the plaintiff that were not justified or contemplated under the contract to build the house. Although the defendants communicated their demands by contacting the plaintiff while he was in Massachusetts, the activities that gave rise to this dispute occurred in the Cayman Islands.

The third Gestalt factor to consider is the plaintiff's interest in obtaining convenient and effective relief. The First Circuit has observed that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395. Nevertheless, this preference is not binding on the court and it is appropriate for the court to examine the facts of the case and determine where, in reality, it would be most convenient to litigate. See Ticketmaster-New York, 26 F.3d at 211 (court considers "plaintiff's *actual* convenience," not just plaintiff's preference). In the instant case, the plaintiff, like the defendants, is a resident of the Cayman Islands and owns property there. Furthermore, the house at issue is in the Cayman Islands, as are most, if not all, third-party witnesses. Accordingly, it appears at least as convenient for the plaintiff to litigate this matter in the Cayman Islands as it is for the plaintiff to pursue his claims in Massachusetts.

The remaining factors – the judicial system's interest in obtaining the most effective resolution of the controversy and the interests of affected governments in promoting substantive social policies – do not appear to favor either party. It is undisputed that the plaintiff may pursue his action in the Cayman Islands, a British territory. Assuming, arguendo, that Massachusetts law applies to this case, which is an open question, there is no reason why the Caymanian courts cannot apply Massachusetts law. Compare Pleasant Street II, 987 F.2d at 46 (if dismissal would result in there being no judicial resolution anywhere, case will be litigated in Massachusetts). Finally, this

case does not involve any unique social or policy issues of concern either to Massachusetts or the Cayman Islands.

In sum, "[c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a [Massachusetts] court over [the Zimmers] in this instance would be unreasonable and unfair." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 115, 107 S. Ct. 1026, 1034, 94 L. Ed.2d 92 (1987).

### IV.  CONCLUSION

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum in which he has established no meaningful 'contacts, ties, or relations'." Burger King Corp., 471 U.S. at 471-72, 105 S. Ct. at 2182 (quoting Int'l Shoe Co., 326 U.S. at 319, 66 S. Ct. at 160).  Even after taking the plaintiff's affirmatively alleged facts as true, and construing disputed facts in his favor, as this court is required to do, this court concludes that the exercise of personal jurisdiction over the defendants in this case would offend due process.  Therefore, for the reasons stated herein, this court recommends to the District Judge to whom this case is assigned that the defendants' Motion to Dismiss for lack of personal jurisdiction (Docket No. 28) be ALLOWED.[10]

---

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings,

            / s / Judith Gail Dein
            Judith Gail Dein
            United States Magistrate Judge

---

recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).